**AUTO SUNROOF OF LARCHMONT, INC., Plaintiff,**

v.

**AMERICAN SUNROOF CORPORATION, Auto Sunroof, Inc., Eastern Sun Auto Top, Defendants.**

**No. 86 Civ. 1809 (EW).**

United States District Court, S.D. New York.

July 26, 1986.

Kaplan, Russin, Vecchi & Kirkwood, New York City, for Plaintiff; Steven Thal, Anthony E. Davis, Jeanne Ferris Siegel, Priva H. Simon, of counsel.

Butzel, Keidan, Simon, Myers & Graham, Detroit, Mich., for Defendants American Sunroof Corp. and Eastern Sun Auto Top; Rodman N. Myers, Jack J. Mazzara, Bruce L. Sendek, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Defendants American Sunroof Corp. and Eastern Sun Auto Top; Steven Glickstein, Scott M. Berman, of counsel.

Schoeman, Marsh, Updike & Welt, New York City, for Defendant Auto Sunroof, Inc.; Nancy Ann Connery, Beth L. Kaufman, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Auto Sunroof of Larchmont, Inc. (ASL) installs sunroofs in cars as a distributor for defendant American Sunroof Corporation (ASC), a sunroof manufacturer. In settlement of litigation concerning their 1977 franchise agreement, ASL and ASC on January 6, 1982 entered into a "sales agreement" that limited ASC's right to contract with new distributors in a territory consisting of several New York and New Jersey counties—a territory assigned to ASL. After entering the agreement, ASC contracted with two new dealers in the territory, Auto Sunroof, Inc. (Auto Sunroof) and Eastern Sun Auto Top (Eastern Sun). Plaintiff, claiming ASC's actions violated the sales agreement, commenced this action against ASC, seeking an injunction against further violations, as well as damages for breach of contract, interference with future business relationships, and prima facie tort. ASL's complaint also asserts claims against the new distributors, Eastern Sun and Auto Sunroof, seeking damages for tortious interference with its contractual relationship with ASC.

After ASL filed suit, defendant ASC notified plaintiff that it would contract with a third new distributor, in Union County, New Jersey, unless ASL exercised an option to establish a facility there. ASL moves under Fed.R.Civ.P. 65 that ASC be preliminarily enjoined from contracting for the establishment of a new facility in Union County. Eastern Sun and Auto Sunroof move under Fed.R.Civ.P. 12(b)(2) for dismissal of the claims against them for lack of in personam jurisdiction. ASC and Eastern Sun also move for a transfer of venue to New Jersey pursuant to 28 U.S.C. § 1404(a).

## ASL'S MOTION FOR A PRELIMINARY INJUNCTION

█ Under its sales agreement with ASL, ASC agreed not to contract for the establishment of any new retail sales and servicing facilities in seven New Jersey and six New York counties. This commitment was, however, subject to the exception that ASC could establish additional dealerships if it determined in its "honest business judgment" that ASL's market penetration in the territory was inadequate, and if it first gave ASL written notice of its intention to establish such additional facilities and offered ASL the option to own and operate the facilities.

In mid–1985, at a cost of $1,500,000 plaintiff opened a new plant and facility in New Rochelle, New York, to provide efficient service within its territory. Plaintiff alleg-

es that the new facility is running efficiently and can service the actual and foreseeable needs of the car dealers in the territory, without another new facility. ASC, however, contends otherwise. In a letter dated March 21, 1986, ASC notified ASL of its intention to establish a new facility in Linden, New Jersey, located in Union County, a part of plaintiff's territory. The letter gave ASL 90 days to decide whether it wanted to open a facility in Linden, a deadline later extended to August 2, 1986.

To date, ASL has not exercised its option; instead, it seeks a preliminary injunction preventing ASC from establishing any new installation facility in Union County. ASL in essence asserts that ASC's March 21, 1986 letter is a retaliatory measure against ASL for commencing its suit and that ASC did not exercise honest business judgment in concluding that an additional facility is needed. ASL states that it does not have the finances to open a new facility in Linden and that despite ASC's survey indicating that it has not fully exploited its market, it is fully capable of serving the area from its New Rochelle facility. Apart from these allegations, however, plaintiff has offered no evidence to sustain its contention that ASC did not exercise its honest business judgment in determining that market penetration in the territory is inadequate.

Under the law of this circuit, a preliminary injunction may be granted only when "the moving party demonstrates (1) irreparable harm and (2) either (a) a probability of success on the merits or (b) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the moving party's favor." [1]

In arguing that it faces irreparable harm, ASL claims that ASC's opening of a new Linden facility would harm it by causing it to lose sunroof customers, lose sales of incidental products to those customers, lose referral sales, and lose the ability to serve customers in the Linden area in an efficient manner. This harm would be irreparable, it argues, because the exact amount of loss would be incalculable and because it would ultimately put ASL out of business.

Plaintiff, however, has offered no proof that it will be put out of business. Instead of presenting concrete data on how much of its business is from Linden and how close it already is to business failure, plaintiff offers only the self-serving statement of its President that its business will collapse. With nothing more than this statement, plaintiff's claim is speculative.

Additionally, the cases relied upon by plaintiff in arguing that it will suffer irreparable harm are readily distinguishable from the instant case. In both *Interphoto Corp. v. Minolta, Corp.*[2] and *Jacobson & Co., Inc. v. Armstrong Cork Co.*,[3] plaintiffs were terminated distributors who alleged that their inability to sell defendants' products would deprive them of the full line of goods needed to satisfy their current customers. In *Armstrong*, plaintiff had outstanding contractual obligations to provide defendants' products and would have been deprived of 80% of the goods it usually stocked. Cut off from their suppliers, plaintiffs would have lost customers to competitors who were able to offer the defendants' goods. ASC, however, has not refused to supply ASL with sunroofs; indeed, it has offered ASL the chance to open a new facility in New Linden. In light of these facts and defendant's contention that it needs a distributor in Linden to supply customers that plaintiff has failed to attract, the possibility that plaintiff will lose customers is much more uncertain than it was in *Minolta* or *Armstrong*. Indeed, plaintiff conceivably might lose no sales at all.

Moreover, plaintiff fails to prove that any lost sales would not be compensable in

1. *Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41–42 (2d Cir.1986); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.

1985); *Barris/Fraser Enters. v. Goodson-Todman Enters., Ltd.*, 638 F.Supp. 292, 293 (1986).

2. 417 F.2d 621, 622 (2d Cir.1969) (per curiam).

3. 416 F.Supp. 564, 570 (S.D.N.Y.1976)

money damages. On the contrary, defendant's claimed ability to project sunroof sales in plaintiff's territory suggests that plaintiff's lost sales could be calculated. Incidental sales could be estimated according to the ratio between plaintiff's sunroof sales and incidental sales in recent years. With regard to referral sales, plaintiff has adduced no evidence that it can expect any referrals simply by virtue of doing business with customers in Linden. The harm of lost referrals, while perhaps difficult to quantify, is by the same token too speculative to support imposition of a preliminary injunction.

ASL has also failed to bear its burden of proving that it is likely to succeed on the merits of its claim that ASC's contracting with a new Linden distributor would violate the sales agreement.[4] At the outset, the parties have a sharp dispute over whether the sales agreement, which restricts ASC's establishment of "retail" dealerships, even applies to the establishment of the Linden facility, which would serve auto dealers. The parties dispute whether a purchase by an auto dealer is a "retail" transaction. Even assuming ASL can clear this initial hurdle, however, it has not established a likelihood of success. Given ASC's March 21, 1986 letter, ASL cannot claim it has not been notified of ASC's intent to set up a franchise or that ASC has failed to offer it the Linden location.

ASL's remaining argument on the merits is that ASC seeks to establish the Linden franchise to retaliate for ASL's lawsuit and thus did not exercise "honest business judgment" in concluding that ASL failed to penetrate its market adequately. ASC effectively refutes this allegation in its affidavits. ASC states that it began considering establishing a Linden franchise in 1985 and decided to do so in January 1986, well before ASL filed its complaint. ASC also states that it concluded ASL's market penetration was inadequate based on 1) its assessment of the number of sunroof sales

it could expect given the population in the area, 2) its receipt of numerous inquiries from persons wanting to become ASC dealers in the area, 3) the expressed dissatisfaction of northern New Jersey dealers with sending their cars to plaintiff's New Rochelle facility, and 4) evidence of delays in installation at ASL's facility. Although ASL denies that there have been lengthy delays at its facility, it does not deny the rest of ASC's specific claims regarding the market. ASL thus has not offered sufficient evidence to establish its likelihood of success on the merits.

At best then, ASL can only claim to have raised serious questions that present a fair ground for litigation. Yet to argue for a preliminary injunction on that basis would also require proof that the balance of hardships tips sharply in plaintiff's favor. ASL has not shown this to be the case. Plaintiff's claim that its business will collapse is based on unproven assumptions regarding the size of the market in its "territory" and the number of customers it requires to stay in business. Its claim is purely speculative. Defendant not only offers specific evidence suggesting that plaintiff has failed to exploit its market, but also makes the claim that if it is enjoined from establishing a new dealership, it may lose lucrative contracts with foreign auto companies who deliver their imports in northern New Jersey. Given that plaintiff has presented no market figures, it cannot be said that the balance of hardships tips toward the plaintiff. Accordingly, the motion for a preliminary injunction is denied.

### THE DISTRIBUTORS' MOTIONS TO DISMISS FOR LACK OF IN PERSONAM JURISDICTION

█ Each distributor sued by plaintiff for tortious interference with contractual relations moves for dismissal of plaintiff's claims for lack of in personam jurisdiction. The burden of proof on these motions is on plaintiff,[5] and because plaintiff has sued in

---

**4.** Although plaintiff also sued ASC in tort for contracting with Eastern Sun and Auto Sunroof, it alleges no tort claim as the basis for its motion for a preliminary injunction against establishment of the Linden facility.

**5.** See Singer v. Bell, 599 F.Supp. 350 (S.D.N.Y. 1984).

diversity, it must prove this court has in personam jurisdiction under New York law.[6] Plaintiff argues that such jurisdiction exists over both defendants under two provisions of the New York long-arm statute: the provision in C.P.L.R. § 302(a)(1) applying to any person who "transacts any business" in New York, and the provision in C.P.L.R. § 302(a)(3) applying to any person who "[c]ommits a tortious act without the state causing injury to person or property within the state."[7]

Plaintiff relies heavily on the rule that in personam jurisdiction will be presumed pending trial if it can present a prima facie case in support of such jurisdiction.[8] Yet plaintiff fails to present sufficient evidence to make such a prima facie case. The only hard evidence plaintiff offers comes from limited admissions in the defendants' affidavits. The President of Auto Sunroof admits that his company services Potamkin Cadillac, a New York-based auto dealer; he states, however, that all installation occurs in a work-area that Auto Sunroof subleases at Potamkin's large facility in Bloomfield, New Jersey. Eastern Sun's principal shareholder states that his company's only dealing with a New York customer was its filling of an unsolicited wholesale order for two sunroofs for a Manhattan car dealer. Eastern Sun also maintains that all its installations are done in New Jersey. Reaching beyond these admissions, plaintiff asks the Court to infer that defendants pick up and deliver cars in New York, solicit business in New York, and attend trade shows in New York. Plaintiff repeatedly states that it "believes" these assertions to be true.[9] The limited work that defendants have done in New Jersey for two New York car dealers is inadequate to support such inferences. Although plaintiff contends that its complaint was sufficiently supported by affidavits to withstand defendants' motions to dismiss, it at times suggested that discovery would aid its cause. Yet at no time did it ask that the motion be deferred to enable it to conduct discovery; to the contrary, it indicated that it was ready to proceed upon the existing record.

Given the entirely speculative nature of its allegations, plaintiff fails to make a prima facie case for in personam jurisdiction under § 302(a)(1). Yet even if the allegations were true, plaintiff's argument would still fail because § 302(a)(1) requires that the contacts alleged directly constitute the basis for its cause of action.[10] In this case, plaintiff's action for tortious interference with contractual relations is not based on Eastern Sun and Auto Sunroofs' sales to New York customers. As plaintiff has admitted, its contract with ASC does not prevent others from making sales within its territory, but merely limits the opening of new franchises in that territory. Thus, because plaintiff only has to prove that defendants induced ASC's violation of the

---

6. *See Arrowsmith v. United Press International,* 320 F.2d 219 (2d Cir.1963).

7. Plaintiff also argues that in personam jurisdiction exists over Auto Sunroof because it is "doing business" in New York. *See* C.P.L.R. § 301. This test requires that a defendant engage in a continuous and systematic course of business in New York. *See Faherty v. Fender,* 572 F.Supp. 142, 145 n. 2 (S.D.N.Y.1983); *Frummer v. Hilton Hotels Int'l, Inc.,* 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 533, *cert. den.,* 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Tauza v. Susquehana Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917). Yet plaintiff's only specific allegation in this regard, made upon "information and belief," is that Auto Sunroof frequently sends "trucks and/or employees into Manhattan to pick up and return Potamkin Cadillac's cars." *See* Memorandum of Law in Opposition to Auto Sunroof, Inc.'s Motion to Dismiss, 4 n. 1. Given Auto Sunroof's specific denial of such activity at oral argument, plaintiff fails to present a prima facie case that defendant is "doing business" in New York.

8. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117, 120 (2d Cir.1984); *Mayes v. Leipziger,* 674 F.2d 178, 182 n. 3 (2d Cir.1982); *Morse Typewriter Co., Inc. v. Samanda Office Communications Ltd.,* 629 F.Supp. 1150, 1151 (S.D.N.Y.1986).

9. Affidavit of Paul Spadaccini, June 9, 1986, at ¶ 10; Affidavit of Paul Spadaccini, July 21, 1986, at ¶ 13.

10. *See Arrow Trading Co., Inc. v. Sanyei Corp.,* 576 F.Supp. 67, 70–71 (S.D.N.Y.1983); *McGowan v. Smith,* 437 N.Y.S.2d 643, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).

sales agreement, the fact that defendants have been selling sunroofs is not material to its cause of action,[11] and cannot provide a basis for personal jurisdiction under § 302(a)(1).

Plaintiff also argues that even if the tortious interference did occur in New Jersey, in personam jurisdiction would still exist under § 302(a)(3). A threshold requirement under § 302(a)(3), however, is that the tortious act cause "injury to person or property within the state." The fact that plaintiff is located in New York does not in itself mean that plaintiff was injured there. Rather, in commercial tort cases where loss of profits or customers is alleged, the locus of the injury is usually "the place where the critical events took place."[12] In the instant case, plaintiff does not offer evidence of any critical events taking place in New York. Although the dealers that had the sunroofs installed in New Jersey sell their cars in New York, the sale of the cars does not determine the locus of plaintiff's injury. Rather, the sale and installation of the sunroofs is what matters, and on the affidavits presented, that location appears to be New Jersey. Plaintiff thus fails to present a prima facie case for personal jurisdiction under § 302(a)(3).

### ASC'S MOTION FOR A TRANSFER OF VENUE

■ Defendant ASC has moved for a transfer of venue on the grounds that plaintiff's suit might have been brought in New Jersey and that several of its witnesses and many of the records relevant to the case are in New Jersey. Plaintiff's choice of forum, however, is entitled to some weight, and the relative convenience of

Newark as opposed to New York City is not great enough to justify a transfer.[13] Upon a full consideration of the contentions of parties and applying the factors set out in *Schneider v. Sears,*[14] the motion for a transfer of venue is denied.

### CONCLUSION

Plaintiff's motion for a preliminary injunction is denied, and the motions of defendants Eastern Sun and Auto Sunroof for dismissal of the complaint against them are granted for lack of in personam jurisdiction. Auto Sunroof's motion for a stay of discovery pending resolution of its jurisdictional motion is now moot. ASC's motion for a transfer of venue is denied.

So ordered.

---

**11.** In its claim for punitive damages, plaintiff alleges that the sunroof sales from within its territory are part of the tortious interference of which it complains. Granted that the sales are what plaintiff cares about preventing and may provide the measure of damages, it is nonetheless true that the sales are not the basis for plaintiff's cause of action.

**12.** *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428, 433 (2d Cir. 1971) (quoting *Spectacular Promotions, Inc. v. Radio Station WING,* 272 F.Supp. 734, 737 (E.D.

N.Y.1967)); *accord Aaacon Auto Transport, Inc. v. Barnes,* 603 F.Supp. 1347, 1349 (S.D.N.Y. 1985); *MIJE Assocs. v. Halliburton Servs.,* 552 F.Supp. 418, 420 (S.D.N.Y.1982); *Data Communication, Inc. v. Dirmeyer,* 514 F.Supp. 26, 30 (E.D.N.Y.1981).

**13.** *See Colgate-Palmolive Co. v. North American Chemical Corp.,* 238 F.Supp. 81, 84 (S.D.N.Y. 1964); *Jenkins v. Wilson Freight Forwarding Co., Inc.,* 104 F.Supp. 422, 424–25 (S.D.N.Y.1952).

**14.** 265 F.Supp. 257 (S.D.N.Y.1967).