**BUSINESS TRENDS ANALYSTS, Plaintiff,**

v.

**The FREEDONIA GROUP, INC. and the Freedonia Group, Incorporated, Defendants.**

**No. 86 Civ. 3540 (EW).**

United States District Court, S.D. New York.

Jan. 5, 1987.

Moses & Singer, New York City, for plaintiff; Stanley Rothenberg, David Rabinowitz, Jules F. Simon, of counsel.

Donovan Leisure Newton & Irvine, New York City, for defendants; Daniel R. Murdock, James L. Stengel, Jeffrey A. Conciatori, of counsel.

EDWARD WEINFELD, District Judge.

Plaintiff Business Trends Analysts ("BTA") brings this action against defendants The Freedonia Group, Inc. and The Freedonia Group, Incorporated (collectively "TFG"), alleging copyright infringement, misappropriation of trade secrets, inducement of employees' breach of fiduciary duties and duty of good faith and loyalty, misidentification of goods in interstate commerce, and unfair trade practices under New York law. BTA moves for preliminary injunctive relief and TFG cross-moves to dismiss pursuant to Fed.R.Civ.P. 12(b) for failure to state a claim upon which relief can be granted, for lack of in personam jurisdiction, and for lack of venue in this district.

BTA and TFG are consulting companies that produce industry analysis reports. Such reports present statistics concerning sales of products and services in domestic and international markets and predict both the demand for the products or services and the likely performance of individual firms. One of the first companies to enter this business was Predicasts, Inc., ("Predicasts") not a party to the present action. In 1984, after roughly 25 years of producing and marketing these reports, Predicasts ceased that portion of its operations. By an agreement effective January 1, 1985,[1] Predicasts granted plaintiff BTA an exclusive license to distribute its existing series of industry studies and to prepare and distribute derivative works.

Defendant TFG was formed in 1982 by William Weiss, who had been employed by Predicasts since its formation in 1960. In April 1982, when he was president of Predicasts' Research Group, his employment agreement was terminated by mutual consent and he signed a non-competition agreement which by its terms expired on November 30, 1982. There is no claim of violation of this agreement. In 1983 he organized The Freedonia Group, Inc. (later becoming The Freedonia Group, Incorporated) and in 1984, when Predicasts disbanded its Research Group, he hired several former Predicasts employees who had been terminated by Predicasts as a result of the dissolution. Thereafter, TFG began producing and distributing industry studies in direct competition with Predicasts' studies, which, after January 1, 1985, were marketed exclusively by plaintiff.

Plaintiff's first claim alleges that defendant's *Industry Study 113: Robotics* ("the TFG study") infringes the copyright on Predicasts' Study 3547, *Robotics (Markets and Competitors)* ("the BTA study"), presently marketed by BTA under its exclusive license. The second claim alleges that TFG has misappropriated and is using the trade secrets of Predicasts in the form of Predicasts' customer and prospect lists and sales records. The third and fourth claims allege that TFG induced Predicasts employees to appropriate proprietary information and join TFG and thereby breach their common law duties to Predicasts. Plaintiff's fifth claim is that defendant's use of the common law trademark PREDICASTS in its own promotional materials has been misleading as to the origin of TFG's products, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Plaintiff's sixth claim is that TFG has violated state law of unfair competition. Finally, plaintiff's seventh claim is that TFG's use of the PREDICASTS name has violated New York's Anti-Dilution Statute.

The plaintiff, in addition to claims for damages and an accounting, seeks preliminary and permanent injunctive relief barring (1) infringement of BTA's rights under copyright in the Predicasts Robotics Study; (2) publication or sale of TFG's robotics study or any study confusingly similar to the Predicasts line of studies; (3) the use of trade secrets or proprietary information originating with Predicasts; (4) unfair com-

---

1. Affidavit of Michael Giudice, Ex. 1.

petition with BTA or misappropriation of the goodwill in the name "Predicasts" or in BTA's line of industry studies published under that name. Plaintiff now moves for a preliminary injunction. Defendant, opposing such motion, also moves to dismiss plaintiff's complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.

## I. TFG's Motion to Dismiss

### A. Personal Jurisdiction

██ At this pleading stage of the litigation, plaintiff BTA need only make a prima facie showing that this Court has personal jurisdiction over the defendant.[2] BTA bears this burden separately with respect to each claim it asserts.[3] N.Y.C.P. L.R. § 301 et seq. provides the standards for personal jurisdiction with regard to all of plaintiff's claims, since federal courts must determine questions of personal jurisdiction in accordance with the laws of the state in which they sit, not only where subject matter jurisdiction is founded in diversity,[4] but also where, as in the instant case, jurisdiction over some claims is founded on the presence of federal questions.[5]

TFG is an Ohio corporation, and it's only office is in Cleveland Heights, Ohio. It does not maintain an office, mailing address, or telephone listing in New York, nor does it own or lease any real property here. Nine percent of the 28,000 names on TFG's master mailing list are in New York, and one of the 35 copies sold of TFG's robotics study has been shipped to a customer in New York. TFG also has an arrangement with FIND/SVP, an independent contractor located in New York City, which accepts and places orders for TFG's studies in return for a commission.[6]

██ It is undisputed that defendant has not engaged in a systematic and continuous course of business in New York that would satisfy the "doing business" test of N.Y.C.P.L.R. § 301.[7] Personal jurisdiction for several of plaintiff's claims, however, may be grounded on New York's long-arm statute, specifically, N.Y.C.P.L.R. § 302(a)(2), which applies where a defendant "commits a tortious act within the state" of New York.[8] Copyright infringement,[9] violation of § 43(a) of the Lanham Act,[10] violation of New York's anti-dilution

**2.** *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.1984); *Mayes v. Leipziger*, 674 F.2d 178, 182 n. 3 (2d Cir.1982); *Auto Sunroof of Larchmont, Inc. v. American Sunroof Corp.*, 639 F.Supp. 1492, 1496 (S.D.N.Y.1986); *Morse Typewriter Co., Inc. v. Samanda Office Communications Ltd.*, 629 F.Supp. 1150, 1151 (S.D.N.Y.1986).

**3.** *R.F.D. Group Ltd. v. Rubber Fabricators, Inc.*, 323 F.Supp. 521, 524 (S.D.N.Y.1971).

**4.** *Arrowsmith v. United Press International*, 320 F.2d 219, 225 (2d Cir.1963).

**5.** *United States v. First Nat'l City Bank*, 379 U.S. 378, 381, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Metropa Co., Ltd. v. Choi*, 458 F.Supp. 1052, 1054 (S.D.N.Y.1978).

**6.** Reply Affidavit of William M. Weiss at paras. 1–8.

**7.** *See Auto Sunroof of Larchmont, Inc. v. American Sunroof Corp.*, 639 F.Supp. 1492, 1496 (S.D. N.Y.1986); *Faherty v. Fender*, 572 F.Supp. 142, 145 n. 2 (S.D.N.Y.1983); *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851, *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967); *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915 (1917).

**8.** Because defendant has shipped a copy of its robotics study to a customer in New York, personal jurisdiction is also proper under C.P.L.R. § 302(a)(1), which encompasses any defendant that "contracts anywhere to supply goods or services in the state." *See Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 & n. 7 (2d Cir.1983); *West Mountain Corp. v. Seasons of Leisure Int'l, Inc.*, 82 A.D.2d 931, 440 N.Y.S.2d 729, 730–31 (3d Dept.1981); *Alan Lupton Assocs., Inc. v. Northeast Plastics, Inc.*, 105 A.D.2d 3, 482 N.Y. S.2d 647, 650–51 (4th Dept.1984); *Island Wholesale Wood Supplies, Inc. v. Blanchard Indus. Inc.*, 101 A.D.2d 878, 476 N.Y.S.2d 192 (2d Dept. 1984).

**9.** *Children's Television Workshop v. Mary Maxim, Inc.*, 223 U.S.P.Q. 965, 968 (S.D.N.Y.1984) [Available on WESTLAW, DCTU database]; *R.F.D. Group, Ltd. v. Rubber Fabricators, Inc.*, 323 F.Supp. 521, 524, 527 (S.D.N.Y.1971).

**10.** *Beecham, Inc. v. Certified Chemicals, Inc.* 472 F.Supp. 348, 349 (S.D.N.Y.1979); *Sterling Television Presentations, Inc. v. Shintron Co.*, 454 F.Supp. 183, 189 (S.D.N.Y.1978); *R.F.D. Group, Ltd. v. Rubber Fabricators, Inc.*, 323 F.Supp. 521, 526–27 (S.D.N.Y.1971).

statute,[11] and the use of misappropriated trade secrets in the production or sale of a product[12] are all commercial torts that are deemed to take place at the point of consumer purchase. An actual sale is not necessary to establish personal jurisdiction,[13] and the tortious acts may be performed directly by the defendant[14] or through an agent, who may be an independent retail merchant.[15] Given TFG's sale of the robotics study to a New York customer and its solicitation of sales in New York by direct mail and through FIND/SVP, BTA has alleged TFG's commission of each of the above-mentioned torts in the state of New York. In each case, the plaintiff's cause of action arises from the defendant's attempts to sell its products in New York, so that the nexus requirement of § 302(a)—that the cause of action arise from the acts of the defendant that form the basis for personal jurisdiction—is satisfied. Thus, adequate contacts exist to establish personal jurisdiction over TFG under § 302(a)(2) for purposes of claim one, the copyright claim; claim two, insofar as it alleges misuse of trade secrets; and claims five, six, and seven, alleging violation of § 43(a) of the Lanham Act, unfair competition, and violation of New York's anti-dilution statute.

■ Plaintiff's claims three and four, however, in no way arise from defendant's contacts with New York. These claims allege that TFG, a corporation located in Ohio, induced employees of Predicasts, also in Ohio, to breach duties to Predicasts. Because any such inducement took place entirely in Ohio, these causes of action do not arise from New York contacts and fail to meet the nexus requirement of § 302(a), which requires that the "cause of action aris[e] from ... the acts enumerated" as the basis for personal jurisdiction.[16] The same is true of BTA's second claim, insofar as it alleges misappropriation of trade secrets. Any misappropriation from Predicasts took place entirely in Ohio and did not arise from TFG's contacts with New York.[17]

## B. Venue

■ Venue over BTA's copyright claim is governed by 28 U.S.C. § 1400(a), which provides that suits relating to copyrights "may be instituted in the district in which the defendant or his agent resides or may be found." Since "may be found" has been held to require no more contact than is required by a state's long-arm statute,[18] the propriety of venue on the copyright claim follows from the above discussion of contacts with New York.

■ Venue over BTA's remaining claims is governed by the general federal

---

**11.** *QRM Publishing Co., Inc. v. Reed,* 230 U.S. P.Q. 217 (S.D.N.Y.1986) [Available on WEST-LAW, DCTU database]; *Oral–B Laboratories, Inc. v. Mi-Lor Corp.,* 611 F.Supp. 460, 461–62 (S.D.N.Y.1985); *Metropa Co., Ltd. v. Choi,* 458 F.Supp. 1052, 1054 (S.D.N.Y.1978).

**12.** *Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183, 188 (S.D.N.Y.1978); *R.F.D. Group, Ltd. v. Rubber Fabricators, Inc.,* 323 F.Supp. 521, 524–25 (S.D.N.Y.1971).

**13.** *Honda Assocs. Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y.1974).

**14.** This includes solicitation by mail. *Metropa Co., Ltd. v. Choi,* 458 F.Supp. 1052, 1054–55 (S.D.N.Y.1978); *Honda Assocs. Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y. 1974).

**15.** *Heritage House Frame and Moulding Co., Inc. v. Boyce Highlands Furniture Co., Inc.,* 88 F.R.D. 172, 173 (E.D.N.Y.1980); *Beecham, Inc. v. Certi-*

*fied Chemicals, Inc.,* 472 F.Supp. 348, 349 (S.D.N.Y.1979).

**16.** *See Auto Sunroof of Larchmont, Inc. v. American Sunroof Corp.,* 639 F.Supp. 1492, 1496–97 (S.D.N.Y.1986); *Arrow Trading Co., Inc. v. Sanyei Corp,* 576 F.Supp. 67, 70–71 (S.D.N.Y.1983); *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (1981).

**17.** *Sterling Television Presentations, Inc. v. Shintron Co.,* 454 F.Supp. 183, 188 (S.D.N.Y.1978); *R.F.D. Group Ltd. v. Rubber Fabricators, Inc.,* 323 F.Supp. 521, 524 (S.D.N.Y.1971).

**18.** *Sterling Television Presentations, Inc. v. Shintron Co., Inc.,* 454 F.Supp. 183, 190–91 (S.D.N.Y. 1978); *Hill & Range Songs, Inc. v. Fred Rose Music, Inc.,* 58 F.R.D. 185, 189 (S.D.N.Y.1972); *Boltons Trading Corp. v. Killiam,* 320 F.Supp. 1182, 1183 (S.D.N.Y.1970); *Geo-Physical Maps v. Toycraft Corp.,* 162 F.Supp. 141, 146–47 (S.D.N.Y.1958); *see also Kogan v. Longstreet,* 374 F.Supp. 47, 50–51 (N.D.Ill.1974).

venue statute, 28 U.S.C. § 1391(b), which states that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district ... in which the claim arose....

The venue statutes are designed to protect defendants, in the case of corporations, from having to litigate in areas where they do not have "significant activities." [19] Under the standard applied in this district, the "weight of contacts" of the defendant with regard to the action are assessed, and venue is proper in a district if a "substantial" part of the claim arose there.[20] A substantial part of plaintiff's unfair competition claims arose in this district, as evidenced by the fact that the defendant solicits in New York, with 9% of its mailing list—up to 2,250 addresses—being New York addresses and by the fact that it has an independent contractor in New York City selling its products.[21] The parties, perhaps because they have not conducted discovery on the issue, have not presented argument on the relative ease of conducting this litigation in other districts; defendant's substantial contacts with this district, however, support venue here. Defendant, which markets its products by mail, would no doubt argue that there is no district more convenient for it than Ohio, where it is located and where it has the most "contacts." Yet to accept this argument as conclusive would mean that venue over commercial torts by mail order businesses could only be found in the district where the defendant is located. Such an approach would, as a practical matter, eliminate the § 1391(b) test of where the "claim arose." [22] Since venue may be proper in a district where the defendant engages in a significant amount of tortious activity, even if it is not the most convenient district or the one with the most contacts, venue over plaintiff's unfair competition claims is proper in this district.

### C. Failure to State A Claim

█ Defendant also moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that plaintiff lacks standing to bring its claims. As regards BTA's copyright action, TFG contends that there was no registration with the Copyright Office of the license pursuant to which plaintiff claims to sue for infringement of Predicasts' copyright. The Copyright Office recordation of plaintiff's license, dated March 27, 1986,[23] demonstrates BTA's standing to sue.

█ As to the Lanham Act claim, defendant contends that only Predicasts, as owner of the unregistered common law mark, may bring a claim for infringement. BTA, however, sues for false designation of origin under 15 U.S.C. § 1125(a), which explicitly states that an action may be brought "by any person who believes that he is or is likely to be damaged by the use of any such false description or representation." [24] As the exclusive licensee of the Predicasts industry studies, BTA would clearly be damaged by false description by TFG, which is BTA's direct competitor.

█ Defendant also argues that BTA lacks standing to sue for trademark infringement under state or federal common law, because it has no exclusive license to use the PREDICASTS mark, which is an unregistered, common law mark. Where standing is not limited by statute or by contract with the trademark

---

**19.** *Honda Assocs., Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 889 (S.D.N.Y.1974).

**20.** *Id.* at 892.

**21.** *Heritage House Frame & Moulding Co. v. Boyce Highlands Furniture Co.,* 88 F.R.D. 172, 173 (E.D.N.Y.1980); *Technical Publishing Co. v. Mayne,* 206 U.S.P.Q. 284, 287 (N.D.Ill.1979) (applying the *Honda* test). The contacts here are more substantial than in *Honda* or in *Metropa Co., Ltd. v. Choi,* 458 F.Supp. 1052, 1055 (S.D.N.Y.1978).

**22.** *Children's Television Workshop v. Mary Maxim, Inc.,* 223 U.S.P.Q. 965, 967 (S.D.N.Y.1984) [Available on WESTLAW, DCTU database]; *Polo Fashions, Inc. v. Get Off Your High Horse, Inc.,* No. 83 Civ. 7437, slip. op. (S.D.N.Y. Oct. 4, 1984) [Available on WESTLAW, DCTU database].

**23.** Affidavit of Michael Giudice, Ex. 2.

**24.** *See Silverstar Enterprises v. Aday,* 537 F.Supp. 236, 241 (S.D.N.Y.1982); *FRA S. p. A. v. Surg-O-Flex of America, Inc.* 415 F.Supp. 421, 425–26 (S.D.N.Y.1976).

owner,[25] however, it is sufficient that a plaintiff own an exclusive distributorship for a product sold under the trademark. In *G.H. Mumm Champagne v. Eastern Wine Corp.*,[26] Judge Learned Hand upheld a suit for trademark infringement by the exclusive Eastern United States distributor of champagne marketed under a trademark registered to a French corporation. As in *Mumm*, the absence of the trademark's "owner" in the instant case does not prevent a plaintiff with a concrete interest in protecting the mark from bringing suit.[27] Because BTA has the exclusive right to distribute existing PREDICASTS industry studies and to produce and publish new studies under that trademark, it also has standing to sue for trademark infringement.

 Defendant moves to dismiss BTA's claim concerning use of misappropriated trade secrets on the grounds that BTA lacks standing and that the customer and prospect lists at issue are not trade secrets because potential purchasers of industry studies are easily identified. The argument that the lists are not trade secrets raises issues of fact that cannot be decided on a motion to dismiss; this branch of the motion is thus denied. The argument that BTA lacks standing to sue to protect the lists also fails because Predicasts granted BTA exclusive use of the lists in marketing industry studies.[28]

 Finally, defendant argues that plaintiff lacks standing to sue under the New York Anti-Dilution statute, N.Y. General Business Law § 368–d, because de-fendant is a direct competitor producing a similar product, whereas the statute only protects against use of trademarks on dissimilar products not in competition with plaintiff's goods. As the New York Court of Appeals stated in *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*,[29]

[t]he evil which the Legislature sought to remedy was not public confusion caused by similar products or services sold by competitors, but a cancer-like growth of dissimilar products or services which feeds upon the business reputation of an established distinctive trademark or name.

Based upon this concept, relief is not available under the anti-dilution statute where the infringement claimed is by a direct competitor selling a similar product.[30] This latter situation is concededly the case here; thus, BTA's seventh claim is dismissed for failure to state a claim.

### II. Plaintiff's Motion for A Preliminary Injunction

BTA's motion for a preliminary injunction need only be considered insofar as it is based upon the surviving claims of copyright infringement, violation of § 43(a) of the Lanham Act, trademark infringement, unfair competition, and use of misappropriated trade secrets. Under this Circuit's familiar preliminary injunction standard, BTA must show, as regards at least one of its claims, (1) irreparable harm and (2) either (a) likelihood of success on the merits, or (b) serious issues for litigation and a balance of hardships which tips decidedly in the plaintiff's favor.[31]

---

**25.** Both statutory and contractual limitations were present in *DEP Corp. v. Interstate Cigar Co, Inc.*, 622 F.2d 621 (2d Cir.1980), in which an exclusive distributor of a trademarked product was held to lack standing to sue. The Court laid emphasis upon the Lanham Act's limitations on standing and the fact that the plaintiff's distributorship contract explicitly stated that plaintiff lacked any property interest in the trademark and that infringement suits would be handled by the trademark owner. No such statutory or contractual limitations are present in this case.

**26.** 142 F.2d 499, 502 (2d Cir.), *cert. denied*, 323 U.S. 715, 65 S.Ct. 41, 89 L.Ed. 575 (1944).

**27.** *Id.*

**28.** Affidavit of Michael Giudice, Ex. 1 at para. 2.2.

**29.** 42 N.Y.2d 538, 544, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1167 (1977).

**30.** *Aris-Isotoner Gloves, Inc. v. Fownes Bros. & Co., Inc.*, 594 F.Supp. 15, 24 (S.D.N.Y.1983); *see also Playboy Enters., Inc. v. Chuckleberry Publications, Inc.*, 486 F.Supp. 414, 418 n. 1 (S.D.N.Y. 1980) (dictum).

**31.** *Church of Scientology Int'l v. The Elmira Mission of the Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986); *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Buckingham Corp. v. Karp*, 762 F.2d 257, 261 (2d Cir.1985).

## A. Irreparable Harm

While copyright infringement by itself may be assumed to constitute irreparable harm, significant delay in seeking a preliminary injunction may be sufficient basis for vitiating such an assumption and denying preliminary relief.[32] In *Citibank N.A. v. Citytrust, Inc.*,[33] in which the plaintiff sought a preliminary injunction based upon claims of trademark infringement, false designation of origin, and unfair competition, the Second Circuit stated:

> Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.[34]

In *Citibank*, plaintiff failed to seek an injunction until ten weeks after it learned directly of the allegedly infringing activity. The Court of Appeals, noting that the delay was not due to settlement attempts and that the two banks had coexisted without conflict even prior to the ten-week period, vacated a preliminary injunction.

In "October 1985," BTA learned that TFG was in business as its competitor and by "late October" it received a copy of the TFG Robotics Study.[35] BTA did not commence this action, however, until May 7, 1986, over half a year later. Moreover, TFG began publicizing its business, with reference to its employees' prior experience at Predicasts, as early as July 1985,[36] and distributed its first promotional mailing for its industry studies in late August, 1985.[37] Given the small and specialized market for industry studies, it may be assumed that BTA heard of TFG's emergence and its use of the Predicasts name even before October.

It is uncontested that TFG received no notification of plaintiff's claim before the filing of suit; settlement negotiations are thus not responsible for plaintiff's long delay. BTA's explanation for the delay is that the nature and extent of TFG's unfair competition "only emerged over the next several months," that it took two months to analyze the Robotics study and discover its substantial similarity to Predicasts' study, and that it took "several months" more to confirm that the similarity was "part of TFG's deliberate strategy."[38] Yet the very fact that it took BTA months to find substantial similarity between the studies or to decide that TFG's reference to Predicasts' name might be confusing undercuts BTA's assertions of irreparable harm. On grounds of delay alone, BTA has failed to demonstrate that TFG's sale of its robotics study or use of the Predicasts name is causing irreparable harm.

Moreover, BTA never established that its Robotics study was salable when it brought suit a year and a half after the study's publication. Kevin T. Swift, a TFG employee, states by affidavit that in 1982, while he worked at Predicasts, he conducted a statistical study of the sales of Predicasts's industry studies. He found that generally, 75% of a title's sales occur in the first 12 months after publication, and 90% by the eighteenth month, with the remaining few sales stretched out over the last 12 months of the study's availability, in all, a thirty-month period. After Swift's study, Predicasts shortened the average period during which it would offer its studies to 26 months. Swift noted, however, that Predicasts management believed that studies of high-technology industries, such as robotics, had a useful shelf-life of only a year.[39]

---

**32.** *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir.1985) (per curiam); *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir.1985); *Allen Organ Co. v. CBS, Inc.*, 230 U.S.P.Q. 479 (S.D.N.Y.1986) [Available on WESTLAW, DCTU database].

**33.** 756 F.2d 273 (2d Cir.1985).

**34.** *Id.* at 276.

**35.** Affidavit of Michael Giudice at 38.

**36.** *See* Affidavit of Dennis Macchio, Ex. 20.

**37.** Affidavit of William Weiss at para. 17.

**38.** Affidavit of Michael Giudice at para. 38.

**39.** Affidavit of Thomas Kevin Swift at para. 21.

BTA responds only with the general claim that many Predicasts studies cover fields in which few publications are available and that Predicasts's good name makes its studies of lasting value. This assessment is less convincing than Swift's assessment for Predicasts, which was based on a statistical analysis and enabled him to make a specific estimate for high-technology studies. Plaintiff has thus not demonstrated it has any likelihood of selling additional copies of the PREDICASTS robotics study and has failed to demonstrate irreparable harm.

### B. Likelihood of Success on the Merits

### 1. Copyright Infringement

■■■ A prima facie case of copyright infringement requires evidence of a registered copyright and of the fact of copying or, in the absence of direct evidence of copying, evidence of access by the defendant and a substantial similarity of the two works.[40] Although there is no direct evidence of copying, the primary author of the TFG study admits to having read BTA's study.[41] The crucial issue is thus whether the TFG study is "substantially similar" to the BTA study.

Plaintiff identifies eight passages of one, two, or three sentences in TFG's study which it claims were copied verbatim from the Predicasts study, and eight others it claims are substantially similar to passages in the Predicasts study. Plaintiff also argues that the studies share two errors of fact and display similarity in the selection, arrangement, and organization of facts, as reflected in the studys' tables of contents.

Plaintiff on this motion has not demonstrated likelihood of success on its copyright claim. First, with regard to the passages allegedly paraphrased or copied verbatim, defendant TFG has offered the affidavit of Thomas Swift, author of the TFG study, analyzing each of the passages identified and citing similar passages in works other than the two studies. TFG argues that these similarities result from common parlance in the field of robotics or can be accounted for by the definitional or factual nature of the subjects of the passages.

TFG makes a similar argument concerning the studies' tables of contents. It argues that the tables are different in salient respects and that the similarities result from coverage of the same subject. Certain aspects of the organization may be accounted for by the way in which available data is organized. Swift notes, for example, that the TFG study analyzes robots by end-use because that is current practice in the industry. In any case, the probative value of similarity in tables of contents is limited; the more important question is whether the treatment of the material within them is similar.[42]

BTA's claim that the studies share common errors is also only weak evidence of copying. The claimed errors are two numbers which appear in tables in both studies, and which BTA argues should not have appeared in TFG's study, since more reliable data had become available by the time of its publication. Because the numbers are not identical or close to each other, they do not support plaintiff's contention that they constitute an error "shared" by the studies. Moreover, BTA has not offered a plausible explanation why TFG would construct what appears to be an original table—containing data for dates not covered in the BTA tables—and then rework the table to insert numbers from the Predicasts study. Also, in cases relying upon common errors to support an inference of copying, many more than two such errors were found,[43] and there has

**40.** *Eckes v. Card Prices Update,* 736 F.2d 859, 863 (2d Cir.1984); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977).

**41.** Affidavit of Thomas Kevin Swift at para. 17.

**42.** *Morrison v. Solomons,* 494 F.Supp. 218, 225 (S.D.N.Y.1980).

**43.** *Eckes v. Card Prices Update,* 736 F.2d 859, 863–64 (2d Cir.1984) (numerous errors in lists of baseball cards, including errors in rating value of cards, in players' names, and in omissions from the lists).

been some showing—lacking in the instant case—that the data copied was in some sense "original," and did not consist of uncopyrightable facts.[44]

Plaintiff cannot prevail unless it establishes that it's work "contains some substantial, not merely trivial, originality and that the defendant sold copies embodying the original aspects of his work."[45] Given that the authors of the TFG study are former Predicasts employees and that in any area of study certain words and phrases enter into common usage, similarity between the plaintiff's and defendant's works may be due to their their common subject matter and their authors' training, experience, and acquired writing style, rather than actual copying. Although we do not decide the issue now, it appears that plaintiff will need to present substantially more evidence of similarity or copying in order to prevail.

### 2. Trademark Infringement and Unfair Competition

 Plaintiff has also failed to establish a likelihood of success on its claim that TFG's use of the "PREDICASTS" mark in its promotional literature constitutes trademark infringement at common law, a violation of § 43(a) of the Lanham Act, or unfair competition under New York State law. As this Court has noted, the essential question posed by such trademark claims is "whether a substantial number of ordinarily prudent purchasers are likely to be misled or confused as to the source of the different products."[46] Plaintiff argues that consumers, in the context of TFG's alleged copying of Predicasts's product line, price policy, and report format, will be confused by TFG's description of its management as former Predicasts management and that TFG is using the Predicasts to cause consumers to believe that TFG is the new Predicasts.

Plaintiff's and defendant's customers are sophisticated executives who investigate the origin of a study before purchasing it.[47] But more importantly, TFG's literature is not confusing. TFG's allegedly misleading statements are:

(i) TFG is headed by William M. Weiss, a co-founder of Predicasts, Inc. with over thirty years of business research and planning experience in industry and government.

(ii) The research group is headed by Thomas Kevin Swift, formerly Research Director of Predicasts.

(iii) TFG studies draw on proprietary data bases developed by Robert Baumgartner, architect of the Predicasts Information System.

It is undisputed that these statements are factually accurate, and the experience of TFG's principals is information that TFG may properly present to the public. Stating that these individuals have previously been employed by Predicasts does not invite the inference that the new company, TFG, is affiliated with the old one. Even in the letter that BTA cites as TFG's most "egregious" misuse of the PREDICASTS name—a letter that starts with the statement, "We're back again ..."—it is clear that it is the *people* who once worked for Predicasts that are back, not Predicasts itself. The letter goes on to state that

Predicasts is now out of the study business, but The Freedonia Group (TFG), under the same direction, with the key people from the research group, can bring you TFG INDUSTRY STUDIES.

Although the statement that "Predicasts is now out of the study business" does not inform the public that BTA is licensed to

**44.** *Financial Information, Inc. v. Moody's Investors Service, Inc.,* 808 F.2d 204, 207–208 (2d Cir.1986); *Eckes v. Card Prices Update,* 736 F.2d 859, 863 (2d Cir.1984).

**45.** *Chamberlin v. Uris Sales Corp.,* 150 F.2d 512, 513 (2d Cir.1945).

**46.** *Grenadier Corp. v. Grenadier Realty Corp.,* 568 F.Supp. 502, 503 (S.D.N.Y.1983); *Informa-*

*tion Clearing House, Inc. v. Find Magazine,* 492 F.Supp. 147, 154 (S.D.N.Y.1980); *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 441 F.Supp. 1220, 1225 (S.D.N.Y.1977), *aff'd,* 580 F.2d 44 (2d Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

**47.** Affidavit of William M. Weiss at paras. 22–23.

use the Predicasts name, it in no way suggests that TFG is affiliated with Predicasts. Given the clarity of TFG's promotional literature and the sophistication of the average consumer of industry studies, plaintiff has not established likelihood of success on its trademark and unfair competition claims.

### 3. Use of Misappropriated Trade Secrets

Plaintiff has presented virtually no evidence that TFG has used any of the customer lists assigned by Predicasts to BTA. Dennis Macchio, President of BTA, claims it is "highly likely" that TFG is using Predicasts' confidential customer and prospect lists and sales records. Macchio concedes, however, that plaintiff lacks any direct evidence of such use and asserts that "it may be inferred from TFG's other improper conduct that TFG's employees delivered such lists and records to TFG." [48] Plaintiff's conjectured "highly likely" argument fails to establish "likelihood of success on the merits" or the presence of "serious issues for litigation."

### C. The Balance of Hardships

BTA might still be entitled to relief under the second branch of the preliminary injunction test, which requires "serious issues for litigation and a balance of hardships which tips decidedly in the plaintiff's favor." BTA has not demonstrated, however, that either its trademark or trade secrets claims present serious questions for litigation, or that the balance of hardships on the copyright claim tips decidedly in its favor.

Plaintiff states that TFG's publication of its robotics study is causing it to lose sales and that TFG's use of the PREDICASTS mark deprives plaintiff of the goodwill associated with PREDICASTS. As noted in the discussion of irreparable harm, however, plaintiff's delay in bringing suit, and the age of its Robotics Study undercut plaintiff's claim of harm. Moreover, inso-

far as TFG's use of the PREDICASTS mark is not confusing, TFG is not misappropriating any goodwill attributable to the trademark.

BTA's requested preliminary injunction would substantially burden the defendant. Not only would TFG be deprived of the value of its Robotics Study, but it would also be deprived of its right to inform potential customers of its staff's experience. Moreover, an order that TFG stop "copying" Predicasts' work would in effect command TFG's employees to stop drawing upon their past experience in their trade. To order TFG to redesign its product in a manner its staff believes would make it inferior would be a heavy burden on defendant. In light of this possibility, the balance of hardships does not tip decidedly in plaintiff's favor.

### Conclusion

Plaintiff's claims of misappropriation of trade secrets, and inducement to breach a contract and violate fiduciary duties are dismissed for lack of personal jurisdiction. Its claim under New York's anti-dilution statute is dismissed for failure to state a claim. Defendant's motion to dismiss for lack of jurisdiction, improper venue, and failure to state a claim is denied as to the other causes of action.

Plaintiff's motion for a preliminary injunction as to its surviving claims is denied.

So ordered.

---

**48.** Affidavit of Dennis Macchio at para. 23.