Optical Alignment v. Alignment Servs. CV-95-94-JD    11/01/95 P

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Optical Alignment Systems
and Inspection Services, Inc.

    v.                                           Civil No. 95-94-JD

Alignment Services of North
America, Inc., et al.


O R D E R


The plaintiff, Optical Alignment Systems and Inspection Services, Inc. ("OASIS"), brought this action against Alignment Services of North America, Inc. ("ASNA"), Zane S. Blanchard & Co., Inc. ("ZSB"), Timothy MacDonald, and Paul Dallaire, alleging, inter alia, trademark infringement and unfair competition under federal and New Hampshire law.  Before the court is ZSB's motion to dismiss for failure to state a claim upon which relief can be granted (document no. 6).


Background[1]

OASIS is a New Hampshire corporation in the business of aligning industrial equipment through the use of optical instruments.  In 1989, OASIS registered a service mark with the

---

[1]The court's recitation of the facts relevant to the instant motion are either not in dispute or have been alleged by the plaintiff.

United States Patent and Trademark Office.  The mark consists of the word "OASIS" in capital letters.  The "O" is slightly larger than the other letters and contains within it a depiction of an optical alignment device.

McDonald and Dallaire, former employees of OASIS, left the company in 1993 and formed ASNA, a New Hampshire corporation providing similar services to those offered by OASIS.  In 1994, ASNA arranged for ZSB, a manufacturers' representative, to distribute a letter introducing ASNA to ZSB's customers.  ZSB later circulated a letter to its customers describing ASNA's credentials and stating that the company "was formed in 1993 by former engineers from *Oasis*" (italics in original).

## Discussion

ZSB argues that it is entitled to a dismissal because the reference to Oasis in its letter of introduction for ASNA was neither untrue nor misleading, and thus is not actionable.  The plaintiff contends that the use of the OASIS trademark in the letter of introduction infringed OASIS's goodwill in violation of state and federal law.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." <u>Garita Hotel Ltd. Partnership v. Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992); <u>see also</u> <u>Dartmouth Review v. Dartmouth College</u>, 889 F.2d 13, 16 (1st Cir. 1989). The court may also consider material submitted as part of the complaint or expressly incorporated by reference. <u>See</u> Fed. R. Civ. P. 10(c); <u>Watterson v. Page</u>, 987 F.2d 1, 3 (1st Cir. 1993). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "`only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.'" <u>Garita</u>, 958 F.2d at 17 (quoting <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 52 (1st Cir. 1990)).

I.    <u>Lanham Act Claims</u>

Section 36 of the Lanham Act prohibits the unauthorized reproduction or use in commerce of registered trademarks.[2] As

_____

[2]Section 36 provides:

(1)  Any person who shall, without the consent of the registrant --

       (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of

3

amended, section 43(a) of the Lanham Act proscribes, <u>inter alia</u>, the use in commerce of words or symbols that misidentify the source or affiliation of a product or service.[3] Although section

a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sake, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[]

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C.A. § 1114 (1963).

[3]Section 43(a) provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or

43(a) "prohibits a broader range of practices than does" section 32, <u>Inwood Labs. v. Ives Labs.</u>, 456 U.S. 844, 858 (1982), the pertinent provisions of each require a plaintiff to demonstrate a likelihood of consumer confusion in order to prevail.[4] <u>See generally</u> 3 <u>McCarthy on Trademarks and Unfair Competition</u> § 23.01[1] (3d ed. 1995).

No likelihood of confusion results from the fair and accurate use of a company name "as a means of identifying either an individual working for a company or of describing the nature of goods or services being offered by that company." <u>Biec Int'l, Inc. v. Global Steel Servs., Ltd.</u>, 791 F. Supp. 489, 535 (E.D. Pa. 1992); <u>see also</u> <u>Business Trends Analysts, Inc. v. Freedonia Group, Inc.</u>, 700 F. Supp. 1213, 1233 (S.D.N.Y. 1988) (<u>Freedonia II</u>) (use of trade name of employees' former employer in advertisement to describe credentials of employees not violative

---

      her goods, services, or commercial activities
      by another person,

      . . .

      shall be liable in a civil action by any person who
      believes that he or she is or is likely to be damaged
      by such act.

15 U.S.C.A. § 1125(a) (West Supp. 1995).

   [4]The plaintiff's complaint does not implicate 15 U.S.C.A. § 1125(a)(2) (West Supp. 1995) (prohibiting the misrepresentation of the nature, characteristics or geographic origin of goods or services, without regard to consumer confusion).

of § 36), aff'd in part and rev'd in part on other grounds, 887 F.2d 399 (2d. Cir. 1989); Business Trends Analysts v. Freedonia Group, Inc., 650 F. Supp. 1452, 1461-62 (S.D.N.Y. 1987) (Freedonia I) (same facts do not support finding of likelihood of confusion under § 43(a)). Accordingly, the mere reference to a competitor's trademark will comply with the Lanham Act if the reference is truthful, G.D. Searle & Co. v. Hudson Pharm'l Corp., 715 F.2d 837, 843 (3rd Cir. 1983), and not misleading, Freedonia II, 700 F. Supp. at 1233.

The reference to OASIS in ZSB's letter of introduction satisfies both of these requirements. OASIS has not alleged that the sentence at issue is untruthful. To the contrary, the plaintiff's own complaint concedes that the individual defendants are former employees. Complaint ¶¶ 3, 5. Although the plaintiff has argued at length that the reference to OASIS in ZSB's letter of introduction creates the false impression that OASIS is a sponsor or an affiliate of ASNA, the plain language of the letter, which does nothing other than to identify the founders of ASNA as former employees of OASIS -- belies this claim. See Freedonia I, 650 F. Supp. at 1461 ("Stating that these individuals have been previously been employed by [the plaintiff] does not invite the inference that the [plaintiff] . . . is affiliated with the [defendant]."). If anything, the reference

6

to the individual defendants' former employment with the plaintiff <u>discourages</u> the inference that OASIS and the individual defendants or their company are affiliated.  Because the reference to OASIS was neither false nor misleading, the court dismisses the plaintiff's Lanham Act claims.

II.  <u>State Law Claims</u>

A.  <u>Trademark Infringement</u>

New Hampshire's codification of the Model State Trademark Act, N.H. Rev. Stat. Ann. ("RSA") § 350-A (1984), offers trademark and service mark owners protections beyond those afforded by the Lanham Act.  An essential element of an action for infringement brought under the state statute is registration with the New Hampshire secretary of state.  <u>See</u> RSA § 350-A:11(I) (1984) (prohibiting the unauthorized use of a mark "registered under this chapter" in connection with the sale of goods or services); RSA § 350-A:11(II) (1984) (proscribing the repro- duction and application of "any such mark").  In the instant case, OASIS has not alleged that it has properly registered its mark.  Accordingly, the court dismisses OASIS's 350-A claim for failure to plead a necessary element of a claim under the statute.

B.    Unfair Competition

Under New Hampshire law, a party may bring an action for unfair competition at common law or under the New Hampshire Consumer Protection Act, RSA § 358-A (1984 & Supp. 1994). Although the plaintiff has styled its unfair competition claim as one arising at common law, the parties' briefs in support of and in opposition to ZSB's 12(b)(6) motion draw on case law interpreting the New Hampshire Consumer Protection Act. Consistent with the forgiving standard of review under Rule 12(b)(6), the court considers the unfair competition claim both at common law and as a statutory cause of action.

1.    Common-Law Unfair Competition

Although the New Hampshire Supreme Court has not defined the exact contours of common-law unfair competition, New Hampshire law does provide that "a person is liable for unfair competition if he engages in conduct which deceives the general buying public." Salomon S.A. v. Alpina Sports Co., 737 F. Supp. 720, 722-23 (D.N.H. 1990) (quoting Jacobs v. Robitaille, 406 F. Supp. 1145, 1151 (D.N.H. 1976)). As long as a party does not mislead or confuse the public as to the source of its product, it may refer to a competitor's trademark without competing unfairly. Hypertherm, Inc. v. Precision Prods., Inc., 832 F.2d 697 (1st

8

Cir. 1987) (modifying a preliminary injunction to permit the defendant, a manufacturer of component parts for the plaintiff's product, to refer to the plaintiff's product in its marketing). The court has found, supra, that ZSB's letter of introduction was neither untrue nor even potentially confusing. Thus, the common-law unfair competition claim against ZSB is dismissed.

    2.   The Consumer Protection Act

The New Hampshire Consumer Protection Act prohibits the use of "any unfair or deceptive act or practice in the conduct of any trade or commerce." RSA § 358-A:2. The act provides a non-exhaustive list of prohibited practices, including several prohibitions that codify the common law of unfair competition. See RSA § 358-A:2(II) ("Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"); RSA § 358-A:2(III) ("Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services"); RSA § 358-A:2(V) ("Representing that goods or services have sponsorship [or] . . . approval that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have"). As such, the

9

plaintiff's claims under these provisions have been addressed by the court's conclusions <u>supra</u>.

In addition to the expressed prohibitions, the First Circuit has stated that a practice is actionable under 358-A if:

> (1) it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness, (2) it is immoral, unethical, oppressive, or unscrupulous, or (3) it causes substantial injury to consumers.

<u>Chroniak v. Golden Inv. Corp.</u>, 983 F.2d 1140, 1146 (1st Cir. 1993) (quotation marks and emphases omitted) (borrowing this standard from cases arising under the Massachusetts Consumer Protection Act, Mass. Gen. L. ch. 93A).[5]

The facts that the plaintiff has alleged do not satisfy any of these standards. ZSB's conduct, as alleged by the plaintiff with all inferences drawn in its favor, simply does not rise to an actionable level of unfairness or immorality. <u>Cf.</u> <u>Prestonettes, Inc. v. Coty</u>, 264 U.S. 359, 368 (1924) ("When [a trademark] is used in a way that does not deceive the public, we see no such sanctity in the word as to prevent its being used to

---

[5]The plaintiff argues that the <u>Chroniak</u> framework is not applicable to cases arising out of trademark violations. Accordingly, it asks the court to confine <u>Chroniak</u> to cases involving consumer law and consider its claim under what is essentially a common-law unfair competition analysis. Plaintiff's Objection to ZSB's Motion to Dismiss at 9-11. Having already considered the plaintiff's common-law unfair competition claim, the court need not address the issue.

10

tell the truth. It is not taboo."); <u>Smith v. Chanel, Inc.</u>, 402 F.2d 562, 566-70 (9th Cir. 1968) (policy goals in favor of free and competitive economy militate against expanding trademark law to protect the goodwill associated with a name from references to that name). Further, the court's finding, <u>supra</u>, that ZSB's letter of introduction could not have engendered any likelihood of confusion among consumers precludes a finding that ZSB's reference to OASIS caused substantial consumer injury. Accordingly, the court dismisses the plaintiff's statutory unfair competition claim.

<u>Conclusion</u>

ZSB's motion to dismiss for failure to state a claim (document no. 6) is granted, and ZSB is dismissed from this lawsuit. The remaining parties shall have until December 1, 1995, to show cause why the court should not dismiss the federal claims asserted against the remaining defendants for the reasons stated in this order and remand the state law claims to state court.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

November 1, 1995
cc:  Stephen J. Tybursky, Esquire
     Lawrence M. Edelman, Esquire
     Anthony M. Bonanno, Esquire
     Lawrence J. Casey, Esquire

11