**PHOENIX HOME LIFE MUTUAL INSURANCE COMPANY, a New York corporation, Plaintiff,**

v.

**Raymond M. BROWN and Joan Brown, Defendants.**

**No. 93–CV–0990E(H).**

United States District Court, W.D. New York.

July 6, 1994.

Robert J. Lane, Jr., Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY, for plaintiff.

William G. Bauer, Woods, Oviatt, Gilman, Sturman & Clarke, Rochester, NY, for defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

This suit was brought by Phoenix Home Life Mutual Insurance Company ("Phoenix") against its former agents Raymond and Joan Brown. Allegedly, the Browns—now agents

of Guardian Life Insurance Company ("Guardian"), a competitor of Phoenix—have engaged in "a campaign of procuring the surrender of Phoenix policies for the purpose of replacing those policies with policies issued by Guardian" for the sole purpose of their own pecuniary gain and, in so doing, committed breaches of contracts, breaches of fiduciary duties and interferences with contractual relations. They are further alleged to have contravened the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 *et seq.*, by mailing, in furtherance of the said campaign, forms fraudulently misrepresenting the benefits provided under the Phoenix policies. Phoenix also demands that the Browns return its "policy holder records and files and premium records" which they allegedly are detaining wrongfully. Presently before this Court is the Browns' motion to dismiss the Complaint pursuant to Rules 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, such motion will be denied except for the sixth cause of action for fraud, the dismissibility of which Phoenix concedes.

Firstly, the Browns claim that the case should be dismissed because the venue is improper under both of the venue statutes on which Phoenix relies—namely, 28 U.S.C. § 1391(b)(2) and 18 U.S.C. § 1965(a). Section 1391(b)(2) provides that a federal civil suit may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." The Browns argue that no substantial part hereof can be said to have occurred in this district because only twelve of the forty policy holders who allegedly were illegally solicited reside here. This argument apparently poses that, when faced with several possible venues, a court is to choose the one best venue—*viz.*, the venue with the quantitatively greatest events. However, since the expansion of the venue provision by the 1990 amendments, it has become clear that more than one venue may be deemed proper so long as each satisfies the requirement that the "local" commissions or omissions be substantial. *See Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir.1992). Twelve among the total of forty, though not a majority, is substantial. *Cf., U.S. v. Hartbrodt*, 773 F.Supp. 1240 (S.D.Iowa 1991) (in an action to enjoin mail fraud, the mailing of 200,000 postcard solicitations into the district, out of fifteen million nationwide, constitutes "a substantial part of the events" for purposes of the venue statute); *Business Trends Analysts v. Freedonia Group, Inc.*, 650 F.Supp. 1452 (S.D.N.Y.1987) (venue is proper for an unfair competition claim under the pre–1990 venue provision when 9% of the addresses on defendant's mailing list was in New York and an independent contractor sold the defendant's products there). At the very center of the events giving rise to Phoenix's claim is the fact that the Browns reached toward the policyholders—a significant number of whom reside in this district—by mailing the allegedly fraudulent forms and that such mails were received and relied on by those policyholders.[*] *Cf., Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir.1992) (venue for a claim under the Fair Debt Collection Practices Act exists in a district in which the debtor resides and to which a bill collector's demand for payment was forwarded); *Sluys v. Hand*, 831 F.Supp. 321 (S.D.N.Y.1993) (venue is permissible for a Fair Debt Collections Act claim in locations to which mail is sent); *Dave Guardala Mouthpieces v. Sugal Mouthpieces*, 779 F.Supp. 335 (S.D.N.Y.1991) (venue for a trademark infringement action is proper in the district which was actively targeted by the defendant as a market); *U.S. v. Hartbrodt, supra*, (mailing of postcards into the district consists "substantial part of the events" for a mail fraud claim). To hold otherwise would significantly undermine the permissive language of the general venue provision by insulating those who conduct their business by mail from litigations anywhere but in their own home district. *See Business Trends Analysts v. Freedonia Group, Inc.*, 650 F.Supp. at 1457; *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F.Supp. 1314, 1320 (S.D.N.Y.1989). Having deliberately projected themselves into this district in their allegedly fraudulent solicitation, the Browns cannot now complain of being subjected to a lawsuit here based on such conduct.

In addition, the venue is also proper under 18 U.S.C. § 1965(a), RICO's special

venue provision, which provides that "[a]ny civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." This provision supplements and provides an alternative to the general venue provision discussed above. The Browns argue that they cannot be said to have "transact[ed] [their] affairs" in this district, in that their personal transactions were not conducted here but only affairs transacted on behalf of their employer. In support, they rely on *Payne v. Marketing Showcase, Inc.*, 602 F.Supp. 656, 659 (N.D.Ill.1985), and *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F.Supp. 36, 39 (S.D.N.Y.1983), which held that the language "transacts his affairs" in RICO's venue provision refers to the individual defendant's personal affairs, not the affairs such individual may have transacted on behalf of his or her employer. This holding is a derivation of what is called the "fiduciary shield doctrine"—*see id.* at 40 (relying on the "fiduciary shield doctrine" as one of the steps in reaching the holding)—which holds that, "if an individual has contact with a state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise by that state of jurisdiction over him personally on the basis of that conduct." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir.1981). However, subsequent cases have limited the applicability of the doctrine to those cases where a party resorts to the New York long-arm statute to establish jurisdiction and have rejected its application in RICO contexts. *See Soltex Polymer Corp. v. Fortex Industries, Inc.*, 590 F.Supp. 1453, 1458 (E.D.N.Y.1984); *Rolls–Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F.Supp. 1040, 1059 (S.D.N.Y.1987). And, later, New York's highest court has expressly renounced the doctrine as a matter of New York law. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 472, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988). As a variation of such now-defunct doctrine, the viability of the holding of *Payne* and *Bulk Oil* is highly dubious. Indeed, at least one court has explicitly rejected the holding by stating that "[i]n my opinion, the term 'transacts his af-

fairs' as used in § 1965(a) does not mean that venue of an individual defendant is restricted to a district in which the individual defendant conducts his personal affairs." *Abeloff v. Barth*, 119 F.R.D. 315, 328 (D.Mass.1988). Moreover, even if this Court were to accept the *Payne/Bulk Oil* holding, such has no applicability in a case such as this where each of the individual defendants is conducting activities of their own partnership as a partner thereof. *Cf. Marine Midland Bank, N.A. v. Miller*, 664 F.2d at 903 ("As an equitable principle, the fiduciary shield doctrine is not applied mechanically * * *. In each instance, fairness is the ultimate test.")

Secondly, the Browns claim that Phoenix's RICO causes of action should be dismissed for lack of standing. To have standing to raise a claim under RICO, a plaintiff must show that its injury was proximately caused by a predicate act committed by the defendant. A predicate act proximately causes an injury if it is "a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23–24 (2d Cir.1990). Here, the Browns argue that the causal link between the alleged predicate act—*viz.*, the mailing of the "disclosure forms"—and Phoenix's injury is too attenuated to satisfy the causation requirement. However, it is Phoenix's allegation that the mailings were made to Phoenix policy holders in order to defraud them into terminating Phoenix policies and that the forms so mailed specifically misrepresented the services provided by Phoenix. Given this circumstance, Phoenix's alleged injury—*i.e.*, the loss of premium income and good will—is a direct and foreseeable result of the predicate act. While, here, there is a divergence between the deceived and the injured, in that it was the policy holders and not Phoenix who were deceived by the alleged misrepresentation, no "convergence" of the two is required for the RICO causation to be satisfied. *See Trautz v. Weisman*, 819 F.Supp. 282, 286 (S.D.N.Y.1993); *Shaw v. Rolex Watch U.S.A., Inc.*, 726 F.Supp. 969, 972–973 (S.D.N.Y.1989).

Thirdly, the Browns maintain that the second cause of action for breach of fiduciary duty should be dismissed because, the relationship between Phoenix and the Browns having been terminated, the Browns owed no fiduciary duty to Phoenix during the period relevant hereto. However, under New York law, courts have found a breach of fiduciary duties in a former employee's solicitation of the former employer's customers, especially when there are allegations of the use of confidential information by the ex-employee. *See, e.g., Abraham Zion Corp. v. Lebow,* 593 F.Supp. 551, 569 (S.D.N.Y.1984), *aff'd,* 761 F.2d 93 (2d Cir.1985). While it is certainly open to question whether Phoenix can demonstrate such case of fiduciary breach, the Complaint—when read liberally and in the light most favorable to Phoenix—cannot be said to be devoid of merit.

Fourthly, the Browns assert that the fourth claim for return of chattels pursuant to section 7109 of New York's Civil Practice Law and Rules must be dismissed, for the "policyholder records and files and premium records," which Phoenix demands to be returned, are not unique chattels that are subject to such claim. Corporate records, however, have been held to be properly the subject of replevin actions, *see Whitman v. Kovacs,* 89 N.Y.S.2d 21 (Sup.Ct., N.Y.Co., 1949), and the issue regarding the uniqueness of such records is a question that should best await further inquiry in the later stages of the litigation.

Finally, the Browns argue that the sixth cause of action for fraud should be dismissed because of the lack of reliance by Phoenix on the alleged misrepresentation. Phoenix agrees with this argument and concedes that the fraud claim should be dismissed.

Accordingly, it is hereby **ORDERED** that the defendants' motion to dismiss is granted with regard to the sixth cause of action for fraud but is denied in all other respects.