**Gordon J. VANDEVELD, Plaintiff,**

v.

**Robert CHRISTOPH, individually and as one of the partners of the ChrisKen Group and ChrisKen Marine Management Inc., Defendants.**

**No. 94 C 4074.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 27, 1995.

---

Ariel Weissberg, Chicago, IL, for plaintiff.

Bradley Paul Nelson, Patrick Joseph Heneghan and Todd H. Flaming, Chicago, IL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

BUCKLO, District Judge.

Before the Court are defendants' motions to dismiss or transfer this action for improper venue pursuant to 28 U.S.C. § 1406(a) or, in the alternative, to transfer the action for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss defendant Mr. Christoph for lack of personal jurisdiction pursuant to FED. R.CIV.P. 12(b). For the reasons stated herein, defendants' motions are denied.

### Facts

In late 1989, plaintiff, Gordon Vandeveld ("Mr. Vandeveld") allegedly entered into a verbal partnership agreement with defendant, Robert Christoph ("Mr. Christoph"), and John F. Kennedy ("Mr. Kennedy"), who were then doing business as a partnership known as the ChrisKen Group. Under the partnership agreement, the parties agreed to engage in efforts to obtain an interest in property known as the Miami Beach Marina ("Marina") located in Miami Beach, Florida. At the time, the Marina was owned by the Carner–Mason Limited Partnership ("Carner–Mason") subject to a mortgage held by Heller Financial Corp. ("Heller Financial"). Mr. Vandeveld and the ChrisKen Group established a Florida corporation known as Miami Beach Marina Village, Inc. ("MBMV") for the purpose of acquiring and operating the Marina. The shareholders of MBMV were the ChrisKen Group and Equitable Ventures, Inc., a corporation controlled by Mr. Vandeveld.

In June, 1989, MBMV's attempts to acquire the Marina failed. In October, 1989, Heller Financial foreclosed its mortgage on the Marina, acquired the leasehold, and operated the Marina through a subsidiary known as Tallahassee Building Corp. ("TBC"). Subsequently, Mr. Vandeveld and the ChrisKen Group allegedly modified their partnership agreement to include joint efforts to purchase or lease the Marina from Heller Financial or to negotiate a contract for the management or sale of the Marina. Under the terms of the modified agreement, the ChrisKen Group was primarily responsible for negotiations with Heller Financial and for any day-to-day management of the Marina if the negotiations proved successful. Mr. Vandeveld's primary responsibilities focused on marketing—including, but not limited to, preparation of prospectus materials and meeting with potential investors, purchasers or lessees. This partnership agreement was negotiated, consummated, and modified in Chicago during the course of personal meetings involving Mr. Vandeveld, Mr. Christoph, and occasionally Mr. Kennedy. *See* Vandeveld Aff., ¶¶ 7, 8.[1]

In September, 1991, Mr. Christoph entered into an agreement with TBC to manage the Marina for six months with a right to continue management if Mr. Christoph could successfully negotiate a resolution of litigation between the City of Miami Beach, Heller Financial, and Carner–Mason. Mr. Christoph negotiated a resolution of that litigation. In October, 1991, ChrisKen Marine Management, Inc. ("CMMI") took over management and operation of the Marina, and continued to manage the Marina until December, 1993, when CMMI ceased operations and distributed its assets to its creditors and shareholders. Since December, 1993, the Marina has been managed by RCI Marine, Inc. ("RCI"), whose president is Mr. Christoph. On May 19, 1994, Mr. Vandeveld brought this action in the Circuit Court of Cook County against Mr. Christoph, individually and as General Partner of the ChrisKen Group, and CMMI. On July 5, 1994, Mr. Christoph removed the action to federal court. On November 4, 1994, Mr. Christoph and CMMI moved to dismiss or transfer the action to the Southern District of Florida pursuant to 28 U.S.C. §§ 1406(a), 1404(a), or to dismiss Mr. Christoph for lack of personal jurisdiction pursuant to FED.R.CIV.P. 12(b).

### Analysis

#### I. *Personal Jurisdiction over Mr. Christoph*

Jurisdiction in this case is based on diversity of citizenship. In a diversity action, a federal district court in Illinois has personal jurisdiction over a nonresident defendant only if an Illinois state court would have personal jurisdiction. *Michael J. Neuman &*

---

1. Mr. Christoph insists that all discussions and meetings between himself and Mr. Vandeveld relating to the formation, ownership, and management of MBMV took place in Miami Beach or Miami, Florida. He adds that "nothing substantial occurred" during the meetings between himself and Mr. Vandeveld in Chicago. *See* Christoph Aff., ¶¶ 5, 8. The Court must resolve all factual disputes in favor of Mr. Vandeveld for purposes of these motions. *Diamond Mortgage Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1245 (7th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991) (citations omitted); *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.*, 821 F.2d 399, 402 (7th Cir.1987) (citations omitted).

*Associates, Ltd. v. Florabelle Flowers, Inc.,* 15 F.3d 721, 724 (7th Cir.1994) (citing *Dehmlow v. Austin Fireworks,* 963 F.2d 941 (7th Cir.1992)). The burden of demonstrating the existence of personal jurisdiction rests with the party asserting jurisdiction, *i.e.,* Mr. Vandeveld in the present case. *Publications International, Ltd. v. Simon & Schuster, Inc.,* 763 F.Supp. 309, 310 (N.D.Ill.1991); *Wysnoski v. Millet,* 759 F.Supp. 439, 442 (N.D.Ill.1991) (citing *Saylor v. Dyniewski,* 836 F.2d 341, 342 (7th Cir.1988)).

## A. *Fiduciary Shield Doctrine*

■ Mr. Christoph first argues that his contacts with Illinois were solely in his representative capacity for MBMV or CMMI, and therefore cannot be used to confer jurisdiction over him personally under the fiduciary shield doctrine. The fiduciary shield doctrine prevents the exercise of personal jurisdiction over an individual whose activities in Illinois were performed solely on behalf of his employer, corporation, or other principal. *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 912 (7th Cir.1994) (citations omitted); *Kula v. J.K. Schofield & Co., Inc.,* 668 F.Supp. 1126, 1129 (N.D.Ill.1987) (citations omitted). The doctrine is rooted in the perceived unfairness of forcing "an individual to defend a suit brought against him personally in a forum in which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Torco Oil Co. v. Innovative Thermal Corp.,* 730 F.Supp. 126, 134 (N.D.Ill.1989) (citations omitted). It is an equitable doctrine and, as such, is meant to be applied with discretion. *Rice v. Nova Biomedical Corp., supra,* 38 F.3d at 914 (citation omitted); *Torco Oil Co. v. Innovative Thermal Corp., supra,* 730 F.Supp. at 135 (citations omitted).

■ The fiduciary shield is withdrawn if the agent was acting also or instead on his own behalf—to "serve his personal interests." *Rice v. Nova Biomedical Corp., supra,* 38 F.3d at 912 (citation omitted). Accordingly, the doctrine does not protect general partners, who, unlike corporate officials, are both agents and principals of the partnership. *Felicia, Ltd. v. Gulf American Barge, Ltd.,* 555 F.Supp. 801, 806 (N.D.Ill.

1983); *Phoenix Home Life Mutual Insurance Co. v. Brown,* 857 F.Supp. 7, 10 (W.D.N.Y.1994). In the present case, Mr. Vandeveld alleges that, in consummating the alleged partnership agreement at issue, Mr. Christoph was acting on behalf of the ChrisKen Group, a partnership composed of himself and Mr. Kennedy. *See* Complaint, ¶¶ 3, 5. Accordingly, the fiduciary shield doctrine does not protect Mr. Christoph from the exercise of personal jurisdiction in this case.

## B. *Illinois Long–Arm Statute*

■ Mr. Christoph next argues that the exercise of jurisdiction over him would violate the Illinois long-arm statute as well as due process. Prior to September, 1989, a nonresident defendant could be sued in Illinois only if he or she (1) performed one of the acts enumerated in the Illinois long-arm statute; and (2) established minimum contacts with Illinois which satisfy due process requirements. *Mors v. Williams,* 791 F.Supp. 739, 741 (N.D.Ill.1992) (citation omitted). Effective September 7, 1989, Illinois amended its long-arm statute to include a new "catch-all" provision, which provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS § 5/2–209(c). This "catch-all" provision renders the first inquiry (*i.e.,* did the defendant perform one of the enumerated acts under the long-arm statute) unnecessary because jurisdiction under the Illinois long-arm statute is now co-extensive with the limits of due process. *Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 945; *FMC Corp. v. Varonos,* 892 F.2d 1308, 1311 n. 5 (7th Cir.1990). Accordingly, the Court must ascertain whether the exercise of jurisdiction over Mr. Christoph satisfies the requirements of due process. This determination requires an analysis under both the United States and Illinois Constitutions. *Mors v. Williams, supra,* 791 F.Supp. at 741 (citing *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 398, 565 N.E.2d 1302, 1316 (1990)); *Damian Services Corp. v.*

*PLC Services, Inc.*, 763 F.Supp. 369, 371 (N.D.Ill.1991) (citation omitted).[2]

## C. Federal Due Process

■ Under the Due Process Clause of the Fourteenth Amendment, a state court may exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc., supra*, 15 F.3d at 725. In determining the reasonableness of forcing a nonresident defendant to defend in the forum state, the critical inquiry is whether there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 109, 107 S.Ct. 1026, 1030, 94 L.Ed.2d 92 (1987) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)); *Dehmlow v. Austin Fireworks, supra*, 963 F.2d at 946 (citations omitted).

■ Travel to Illinois to transact business has long been considered an activity that "invokes the benefits and protections" of Illinois law. *Torco Oil Co. v. Innovative Thermal Corp., supra*, 730 F.Supp. at 134 (citing *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 592 (7th Cir.1984); *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1213 (7th Cir.1984)). Moreover, even one visit to the state is sufficient to establish the minimum contacts necessary to support personal jurisdiction, if the cause of action arose out of the defendant's conduct on that visit. *Hyatt International Corp. v. Inversiones Los Jabillos, C.A.*, 558 F.Supp. 932,

934–35 (N.D.Ill.1982) (citations omitted). In the present case, the alleged partnership agreement was negotiated, consummated, and modified during the course of personal meetings in Chicago involving Mr. Vandeveld, Mr. Christoph, and occasionally Mr. Kennedy. Since this action arises from Mr. Christoph's refusal to comply with the terms of an alleged partnership agreement consummated in Illinois, the exercise of jurisdiction over these defendants is reasonable as a matter of federal due process.

This conclusion does not end the analysis. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citing *International Shoe Co. v. Washington, supra*, 326 U.S. at 320, 66 S.Ct. at 160). Several factors inform the fairness of a state court's exercise of jurisdiction over a nonresident defendant, including "the burden on the defendant, the interests of the forum State, ... the plaintiff's interest in obtaining relief, ... 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County, supra*, 480 U.S. at 113, 107 S.Ct. at 1033 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980)).

Both Mr. Vandeveld and the State of Illinois have significant interests in adjudicating the case in Illinois in light of the fact that the partnership agreement at issue was negotiated, consummated, and modified here. Certainly, the State of Illinois has a substantial interest in enforcing contracts involving Illinois citizens negotiated and consummated in this state. Likewise, Illinois citizens have a substantial interest in seeking such redress

---

**2.** The Supreme Court of Illinois has stated that the Illinois Constitution, which contains its own separate and independent guarantee of due process, must be satisfied in addition to the due process guarantee of the U.S. Constitution in order to subject a nonresident defendant to jurisdiction in Illinois. *Rollins v. Ellwood, supra*, 152 Ill.Dec. at 398, 565 N.E.2d at 1316.

in the courts of Illinois. Moreover, the adjudication of this case in Illinois would not be unduly burdensome for Mr. Christoph as a matter of due process. Unlike *Asahi*, long-arm jurisdiction in this case does not extend beyond national boundaries and Mr. Christoph need not present his defense in the judicial system of a foreign nation. *See, e.g., Dehmlow v. Austin Fireworks, supra,* 963 F.2d at 945. Rather, Mr. Christoph need only defend himself in Chicago, a city in which he maintained an office for the ChrisKen Group and an apartment which he occupied during his frequent visits. *See* Vandeveld Aff., ¶¶ 7, 8; Christoph Aff., ¶ 8. Furthermore, since it was not unduly burdensome for Mr. Christoph to come to Chicago to negotiate and consummate the partnership agreement at issue, it is fair to require him to return now to defend this suit. *See Ronco, Inc. v. Plastics, Inc.,* 539 F.Supp. 391, 400 (N.D.Ill.1982). Accordingly, the facts establish adequate minimum contacts such that the exercise of personal jurisdiction over Mr. Christoph in Illinois is consistent with traditional notions of fair play and substantial justice.

### D. *State Due Process*

Under the Due Process Clause of the Illinois Constitution, jurisdiction over a defendant may be exercised by a state court "only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood, supra,* 152 Ill.Dec. at 398, 565 N.E.2d at 1316 (citing *People ex rel. Mangold v. Flieger,* 106 Ill.2d 546, 88 Ill.Dec. 640, 642, 478 N.E.2d 1366, 1368 (1985)); *Mattison Machine Works v. Tupperware of Australia,* No. 93 C 20115, 1994 WL 174170, at *5 (N.D.Ill. May 6, 1994). In construing the Illinois Constitution's guarantee of due process, a court may look for guidance to constructions of the federal due process clause by federal courts. *Rollins v. Ellwood, supra,* 152 Ill.Dec. at 398, 565 N.E.2d at 1316. For the same reasons articulated in connection with the due process analysis under the U.S. Constitution, this Court finds that the acts of Mr. Christoph in Illinois are sufficiently substantial to satisfy the due process requirements of the Illinois Constitution.

### II. *Section 1406(a) Dismissal or Transfer*

Defendants move to dismiss or transfer the case to the Southern District of Florida pursuant to 28 U.S.C. § 1406(a), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Under this section, a district court may transfer a case brought in the wrong district or division if it is in the interest of justice to do so. *Hapaniewski v. City of Chicago Heights,* 883 F.2d 576, 579 (7th Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1023 (1990) (citing *Saylor v. Dyniewski,* 836 F.2d 341, 345 (7th Cir.1988)). If venue is improper, a district court must dismiss the case if it denies the transfer. 28 U.S.C. § 1406(a); *Hapaniewski v. City of Chicago Heights, supra,* 883 F.2d at 579.

Jurisdiction in this civil action is based on diversity of citizenship alone. The applicable provision for determining venue in this case is 28 U.S.C. § 1391(a)(2), which provides that, in diversity actions, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2). The present action arises from an alleged partnership agreement that was negotiated, consummated, and modified during the course of meetings taking place in Chicago. Accordingly, venue is proper in the Northern District of Illinois notwithstanding the possibility that Mr. Christoph's activities may have been more substantial elsewhere. *See, e.g., AMPAC Group Inc. v. Republic of Honduras,* 797 F.Supp. 973, 979 (S.D.Fla.1992), *aff'd.,* 40 F.3d 389 (11th Cir.1994); *Translinear, Inc. v. Republic of Haiti,* 538 F.Supp. 141, 144–45 (D.D.C.1982). "If the selected district's contacts are 'substantial,' it should

make no difference that another's are more so, or the most so." *Merchants National Bank v. SafraBank (California),* 776 F.Supp. 538, 541 (D.Kan.1991) (quoting Siegel, Commentary on 1990 Revision of Subdivisions (a), (b) and (e), 28 U.S.C.A. § 1391 (1991)). Since this action was brought in a proper judicial district, transfer or dismissal under Section 1406(a) is inappropriate.

### III. *Section 1404 Transfer*

■ In the alternative, defendants move to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Transfer is appropriate under Section 1404(a) where the moving party demonstrates that (1) venue is proper in the transferor district, (2) venue and jurisdiction are proper in the transferee district, and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Limited Partnership,* 807 F.Supp. 470, 474 (N.D.Ill. 1992) (citations omitted). Because the task of weighing factors for and against transfer "necessarily involves a large degree of subtlety and latitude," the decision to transfer is committed to the sound discretion of the trial judge. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 (7th Cir.1986) (citations omitted); *Heller Financial, Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989) (citations omitted).

■ The first two elements have been met in this case. First, as explained above, venue is proper in this forum. Second, jurisdiction and venue are proper in the Southern District of Florida ("Southern District"). The Southern District can exercise subject matter jurisdiction over this lawsuit based on diversity of citizenship, as well as personal jurisdiction over these resident defendants. Venue is proper under 28 U.S.C. § 1391(a) since both defendants reside in the Southern District, and the Marina, the property that is the subject of this action, is situated therein. Hence, this Court's inquiry must focus on the third element, *i.e.,* whether a transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.

### A. *Considerations of Convenience*

■ The party seeking a Section 1404(a) transfer bears the burden of showing that "the transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1293 (citing *Coffey v. Van Dorn Iron Works, supra,* 796 F.2d at 219–20 (citations omitted)). The court must consider the plaintiff's choice of forum, the convenience of the parties, and the convenience of the witnesses. *FUL Inc. v. Unified School District No. 204,* 839 F.Supp. 1307, 1311 (N.D.Ill.1993) (citing *Sky Valley Ltd. Partnership v. ATX Sky Valley Ltd.,* 776 F.Supp. 1271, 1276 (N.D.Ill.1991)). Transfer is inappropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." *Sage Products, Inc. v. Devon Industries, Inc.,* 148 F.R.D. 213, 216 (N.D.Ill.1993) (citations omitted).

### 1. *Plaintiff's Choice of Forum*

■ A plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum. *Gallery House, Inc. v. Yi,* 587 F.Supp. 1036, 1040 (N.D.Ill.1984) (citing *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Ronco, Inc. v. Plastics, Inc., supra,* 539 F.Supp. 391). Indeed, a plaintiff's choice of forum should rarely be disturbed unless the balance weighs strongly in the defendant's favor. *Peterson v. United States Steel Corp.,* 624 F.Supp. 44, 45 (N.D.Ill.1985) (citations omitted). Thus, the fact that Mr. Vandeveld has brought this action in the Northern District of Illinois, his home forum, weighs heavily against transfer.

### 2. *Convenience of the Witnesses*

■ The party seeking transfer must clearly specify the key witnesses to be called

and make a general statement of their testimony. *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1293 (citations omitted). In determining whether a particular venue is more convenient to witnesses, a court should not limit its investigation to a review of which party can produce the longer witness list. Rather, a court should look to the nature and quality of the witnesses' testimony with respect to the issues in the case. *Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 57 (N.D.N.Y.1990) (citations omitted); *see also* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 3851 at 424–32 (1986).

The defendants state that they will seek the testimony of several non-party individuals for whom the Southern District of Florida is a more convenient forum. Specifically, they intend to introduce the testimony of eighteen non-party witnesses, seventeen of whom reside in the Southern District of Florida,[3] to establish that the MBMV attempted but failed to acquire a leasehold in the Marina; that TBC entered into a management contract with International Marina Management Company in 1989; that litigation ensued among the City of Miami Beach, Carner–Mason, and Heller Financial; that TBC entered into a six-month management contract with Mr. Christoph in September, 1991; that Mr. Christoph successfully negotiated an end to the Florida state court litigation, enabling CMMI to take over management of the Marina; and that Mr. Vandeveld has not been involved in the management or operation of the Marina from the original negotiation of the management contract to the present. However, Mr. Vandeveld does not contest these issues in this litigation. *See* Vandeveld Aff., ¶ 16; Opposition, p. 9. Rather, the central dispute in this case relates to the formation and content of an alleged partnership agreement between the parties. Accordingly, the defendants have failed to demonstrate that the testimony of these witnesses is relevant to the issues in this case. *See, e.g., Aquatic Amusement Associates, Ltd. v. Walt Disney World Co., supra,* 734 F.Supp. at 58. Likewise, Mr. Vandeveld names various Chicago area residents as potential non-party witnesses,[4] but fails to adequately explain who these individuals are, and how their testimony relates to this litigation.

On the other hand, the testimony of other potential non-party witnesses appears to be relevant to this dispute. Mr. Vandeveld seeks to introduce the testimony of Nicholas Nikolas ("Mr. Nikolas") and Jeff Harman ("Mr. Harman") to establish that Mr. Christoph and Mr. Vandeveld represented themselves as partners to these witnesses with respect to the Marina and that Mr. Vandeveld engaged in efforts to locate investors. The defendants also seek to introduce the testimony of Mr. Nikolas, Mr. Harman, and Paul Chapman ("Mr. Chapman") to establish that these individuals were not involved in negotiations with Mr. Vandeveld as a partner of the ChrisKen Group. Mr. Nikolas resides in Florida; Mr. Harman resides in California; and Mr. Chapman resides in Texas. Christoph Aff., ¶ 22. For these individuals, it is unclear that the Southern District of Florida is more convenient than the Northern District of Illinois. For example, although Mr. Nikolas resides in the Southern District of Florida, both he and Mr. Harman own and manage Nick's Fishmarket in Chicago. Significantly, Mr. Vandeveld also indicates that he intends to introduce the testimony of Mr. Kennedy, the former partner of Mr. Christoph in the ChrisKen Group who attended some of the meetings at which the alleged partnership agreement was discussed. Mr. Kennedy resides in Chicago. Vandeveld Aff., ¶ 15. On balance, it appears that the Northern District of Illinois is a more convenient forum for those non-party witnesses who

---

**3.** These non-party witnesses are Steve Carner, Irwin Mason, Carla Talerico, William Harrison, William Shocket, William Singer, Pat Brown, Stuart Hoffman, Carter McDowell, Paul Chapman, Steve Goldberg, Lawrence Feingold, William Sowden, Robert Hughes, Mike Rogan, John Dellagoria, Roger Carlton, and Ron Stroud. Of these individuals, only Paul Chapman resides outside the Southern District of Florida, *i.e.,* in Texas.

**4.** Mr. Vandeveld lists Harold Benware, Jerry Wexler, Sid Levy, and Mike Blum as his non-party witnesses living in Chicago.

have testimony relevant to the issues in this case.

### 3. *Convenience of the Parties*

Mr. Vandeveld resides in the Northern District of Illinois, while Mr. Christoph resides in the Southern District of Florida. The other defendant, CMMI, is a dissolved Illinois corporation which was controlled by Mr. Christoph. *See* Complaint, ¶ 4; Christoph Aff., ¶¶ 16, 18. Under these circumstances, transfer to the Southern District of Florida will merely shift the inconvenience from one party to the other, which militates against transfer. *See Sage Products, Inc. v. Devon Industries, Inc., supra,* 148 F.R.D. at 216. The fact that Mr. Christoph maintained a Chicago apartment, which he occupied during his frequent visits to the city, in the same building as the business offices of the ChrisKen Group, *see* Vandeveld Aff., ¶ 7, also suggests that it might be more inconvenient for Mr. Vandeveld to prosecute this action in Florida than for Mr. Christoph to defend this action in Illinois.

### B. *The Interest of Justice*

■ The final consideration under Section 1404(a) is whether a change of venue would serve the interest of justice. This factor focuses on the efficient administration of the court system, rather than the private considerations of the litigants. *Espino v. Top Draw Freight System, Inc.,* 713 F.Supp. 1243, 1245 (N.D.Ill.1989) (citations omitted). Interest of justice considerations include "such concerns as ensuring speedy trials, trying related litigation together, and having a judge who is familiar with the applicable law try the case." *Heller Financial, Inc. v. Midwhey Powder Co., Inc., supra,* 883 F.2d at 1293 (citing *Coffey v. Van Dorn Iron Works, supra,* 796 F.2d at 221).

### 1. *Ensuring A Speedy Trial*

Statistics from the Federal Court Management Statistics Report suggest that the parties might receive a speedier resolution of this case in the Northern District of Illinois than in the Southern District of Florida. Of the numerous court management statistics available, two statistics—the median number of months from filing to disposition of civil cases, and the median number of months from issue to trial in civil cases—bear the most relevance to this analysis. *Applied Web Systems, Inc. v. Catalytic Combustion Corp.,* No. 90 C 4411, 1991 WL 70893, at *8 (N.D.Ill. April 29, 1991). The Federal Court Management Statistics Report for the annual period ending September 30, 1993 indicates that the median time from filing to disposition of civil cases was five months in the Northern District of Illinois, compared to eight months in the Southern District of Florida. *See* ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS, 1993 FEDERAL COURT MANAGEMENT STATISTICS, pp. 101, 162. During the same period, the median time from issue to trial in civil cases was thirteen months in the Northern District of Illinois, compared to seventeen months in the Southern District of Florida. *Id.* In other words, there is a three-month difference in median time from filing to disposition, and a four-month difference in median time from issue to trial, a discrepancy which suggests that the prospect of an earlier trial might lie within this district. As such, this consideration slightly militates against transfer.

### 2. *Applicable Law*

Illinois choice of law rules will apply to this action irrespective of whether the court transfers this case. *See Providence Hospital v. Rollins Burdick Hunter of Illinois, Inc.,* 824 F.Supp. 131, 133 (N.D.Ill.1993) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964)). The defendants baldly assert, without any authority or analysis, that "Florida law will, in all likelihood, govern this controversy." Absent any discussion on this issue by the parties in their briefs, the Court declines to speculate on the question of which state's law will apply in this diversity action. Accordingly, this consideration neither militates for nor against transfer.

### C. *Resolution*

Upon weighing these considerations, the court finds that this action should not be transferred to the Southern District of Florida. A defendant moving to transfer an action has the burden of proving that the considerations embodied in Section 1404(a) weigh heavily in favor of transfer. *Peterson*

*v. United States Steel Corp.,* 624 F.Supp. at 45 (citations omitted). As the foregoing discussion demonstrates, defendants have failed to meet this burden here. Accordingly, this Court declines to disturb the plaintiff's choice of forum.

### Conclusion

For the foregoing reasons, defendants' motions to dismiss or transfer the action for improper venue, to transfer the case for the convenience of the parties and witnesses and in the interest of justice, and to dismiss Mr. Christoph for lack of subject matter jurisdiction, are denied.