**Robert BOYD, Ashoor Rasho,
Faygie Fields and Brian
Nelson, Plaintiffs,**

**v.**

**Donald SNYDER, Ronald Shansky, Marion Page, George Detella, George Welborn, Steven Hoepker, Charles Hinsley, Marvin Powers, Kelly Rhodes and IDOC, Defendants.**

No. 99 C 56.

United States District Court,
N.D. Illinois,
Eastern Division.

April 13, 1999.

James P. Chapman, Fagel & Haber, Chicago, IL, Locke E. Bowman, III, Jean MacLean Snyder, Chicago, IL, Mark Joseph Heyrman, Edwin F. Mandel, Chicago, IL, for plaintiffs.

Diann Karen Marsalek, Richard John Siegel, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for defendants.

968

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Robert Boyd, Ashoor Rasho, Faygie Fields, and Brian Nelson, inmates at Tamms Correctional Center ("Tamms"), have brought a six-count amended complaint against defendants Illinois Department of Corrections ("IDOC"), IDOC Director Donald Snyder ("Snyder"), Ronald Shansky, M.D. ("Dr.Shansky"), Marion E. Page, M.D. ("Dr.Page"), IDOC Deputy Director George E. DeTella ("DeTella"), Tamms Warden George Welborn ("Welborn"), Tamms Assistant Warden Charles L. Hinsley, Captain Steven Hoepker, Tamms Medical Director Marvin Powers, M.D., and Tamms Supervising Clinical Psychologist Kelly Rhodes, Ph.D. Plaintiffs allege: (1) deliberate indifference to the inmates' mental health needs in violation of the Eighth and Fourteenth Amendments; (2) living conditions for mentally ill inmates that violate the Eighth and Fourteenth Amendments; (3) violation of the state Mental Health Code, which creates a liberty or property interest under the Fourteenth Amendment; (4) violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; and (5) violation of the Rehabilitation Act, 29 U.S.C. § 504. Plaintiffs request class certification and injunctive relief.

Defendants have filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer venue from the Northern District to the Southern District, where Tamms is located, arguing that transfer serves the convenience of the parties and witnesses and the interests of justice.

## FACTS

Plaintiffs are seriously mentally ill inmates incarcerated at a "super maximum" security facility. Defendant Dr. Shansky, Medical Director of IDOC, has overall responsibility for providing Tamms inmates with health care, while defendant Dr. Page, Chief Psychiatrist for IDOC, has overall responsibility for the inmates' psychiatric care. Plaintiffs allege that they are subjected to extreme isolation, severely restricted movement, harsh punishments, and other psychologically harmful practices that exacerbate their mental illnesses. According to plaintiffs, the policies and practices at Tamms create a destructive cycle. Inmates respond to the harsh conditions by acting destructively towards themselves, others, and their environment. Defendants punish the inmates for this behavior, increasing their pain and making them more destructive. Some of the responses include violently removing an inmate from his cell, stripping him of all clothing and his cell of all property, and requiring him to live for days, naked and without the barest of essentials. Plaintiffs also allege that defendants forcibly sedate inmates and subject them to frequent full body cavity searches in an attempt to discover concealed weapons. Indignities such as these inflict severe physical and psychological pain, making comparatively stable inmates unstable and rendering already mentally ill inmates even sicker.

## DISCUSSION

### I. Standard for Venue Transfer

A transfer is appropriate under § 1404(a) where the moving party demonstrates: (1) venue is proper in both the transferor and transferee court; (2) the transfer is for the convenience of parties and witnesses; and (3) the transfer is in the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and therefore, is committed to the sound discretion of the trial judge." *Id.*

Defendants, as the moving parties, must show that the "transferee forum is clearly more convenient" than the transferor forum. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989) (citing *Coffey*, 796 F.2d 217,

219–20 (7th Cir.1986)). Moreover, defendants must demonstrate that a transfer will promote the efficient administration of justice; they may not simply shift the inconvenience from one party to another. *See Black v. Mitsubishi Motors Credit of America, Inc.,* 1994 WL 424112, at *2 (N.D.Ill. Aug.10, 1994).

## II. Venue

■ In a case where jurisdiction is based on diversity of citizenship, venue is proper in: (1) a judicial district where any defendants resides, if all defendants reside in the same state; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a).

Venue is proper in the Northern District of Illinois under § 1391(a)(1) because two of the defendants reside in this district and all defendants reside in Illinois. Venue is also proper in the Southern District of Illinois under § 1391(a)(1) because four of the defendants reside there. Accordingly, venue is proper in both the proposed transferor and transferee court, and the court has power to transfer this case.

## III. Convenience of the Parties and Witnesses

■ The court must also consider the relevant private and public interests in evaluating the convenience and fairness of a transfer of venue. The private interests include: the plaintiff's initial choice of forum; the situs of material events; the ease of access to sources of proof; the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigating in a particular forum. *Georgouses v. NaTec*

*Resources, Inc.,* 963 F.Supp. 728, 730 (N.D.Ill.1997).

## A. Plaintiff's Choice of Forum

■ The first private interest factor—plaintiff's choice of forum—favors litigating this action in the Northern District of Illinois. Under § 1404(a), "[a] plaintiff's choice of forum is entitled to substantial weight ... particularly when it is also the plaintiff's home forum." *Vandeveld v. Christoph,* 877 F.Supp. 1160, 1167 (N.D.Ill. 1995). According to the Seventh Circuit, "the domicile of [a] prisoner before he was imprisoned is presumed to remain his domicile while he is in prison." *Sullivan v. Freeman,* 944 F.2d 334, 337 (7th Cir. 1991). Plaintiffs allege that the Northern District is their home forum because all four named plaintiffs lived in Cook County before they were incarcerated, and intend to return there after they are released.

■ A plaintiff's choice of forum is not conclusive, however. "The plaintiff's choice is given less weight ... when the plaintiff sues derivatively or as a class representative, and where the cause of action did not conclusively arise in the chosen forum." *Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein Roe & Farnham,* 681 F.Supp. 479, 482–83 (N.D.Ill.1987). Both of these factors are present in the instant case.

### 1. Plaintiffs' Home Forum

■ When "plaintiff alleges a class action, plaintiff's home forum is irrelevant." *Georgouses,* 963 F.Supp. at 730 (citing cases). The court nonetheless addresses plaintiff's argument that most of the plaintiff class resides in the Northern District. Ordinarily, courts give special weight to the plaintiff's place of residence because it is a presumptively more convenient place for the plaintiff to litigate the action. Although plaintiffs allege that at least sixty-four percent of the inmates at Tamms

reside in the Northern District,[1] all potential class members are currently incarcerated at Tamms. Most members of the putative plaintiff class therefore are not actually located anywhere near their domicile. In addition, the percentage of the potential class that resides in each district will fluctuate as prisoners are transferred in and out of Tamms.

### 2. Situs of Material Events

 Even if nearly all of the putative class members reside in Cook County, the court may give the plaintiff's choice of forum less weight if it is not the situs of material events. When "the conduct and events giving rise to the cause of action did not take place in the plaintiff's selected forum, 'the plaintiff's preference has minimal value' " even if it is his home forum. *Dunn v. Soo Line R. Co.*, 864 F.Supp. 64, 65 (N.D.Ill.1994) (quoting *Robinson v. Town of Madison*, 752 F.Supp. 842, 847 (N.D.Ill.1990)); *see also Chicago, R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.1955).

The parties heatedly dispute the definition and location of the material events. Defendants argue that because plaintiffs are challenging the conditions of their confinement at Tamms, all events material to the case occurred in the Southern District. Consequently, defendants contend, the court should give plaintiffs' choice of forum no more weight than any other factor. Plaintiffs respond that the case challenges system-wide policies of defendant IDOC, and that therefore the material events occurred wherever these policies were created. Plaintiffs rely on a District of Columbia case in which the court denied a motion to transfer, even though the plaintiff was incarcerated in North Carolina and the material events had occurred at a Missouri prison, because the plaintiff was challenging a Bureau of Prisons policy developed

in D.C. and applied nationwide. *See Farmer v. Hawk*, 1996 WL 525321, at *1–3 (D.D.C. Sept.5, 1996). According to plaintiffs' allegations, Dr. Shansky and Dr. Page are responsible for providing mental health care to inmates of Tamms, and are likewise responsible, along with Snyder (a resident of the Central District) for the alleged "systemic deficiencies" in the provision of such care. Plaintiffs argue that none of the people responsible for creating the challenged policies reside in the Southern District, and that therefore most of the material events occurred in the Northern District.

Defendants contend that *Farmer* is inapplicable because plaintiffs are challenging policies and practices developed exclusively at and for Tamms, not systemic IDOC policies. Defendants cite in support IDOC Rule 505, 20 Ill.Admin.Code tit. 1, § 505, which sets forth the specific policies and procedures for the Tamms prison (the only "closed maximum security facility" included in the regulation). Defendants also argue that even if the challenged policies could be defined as "department-wide policies," they were not developed in the Northern District, but in the Southern and Central Districts. In support, defendants cite the affidavit of Tamms Warden Welborn, who states in an affidavit that all meetings where Tamms policies were created and developed were held either at Tamms or at IDOC's Springfield office, and that Dr. Page did not attend any of those meetings.

Defendants do not refute plaintiffs' claim that Dr. Shansky was involved in creating the challenged policies. Whether Dr. Shansky participated or not is irrelevant, however, because plaintiffs do not present any evidence to counter defendants' argument that no policy development meetings took place in the Northern District.

---

**1.** Defendants' challenge to the original declaration plaintiffs offer in support of this point is generally well-founded. Plaintiffs have, however, submitted supplementary material based on IDOC's website demonstrating that as many as eighty percent of the inmates may be from Cook County. Defendants do not dispute this number or the paragraphs of plaintiffs' declaration which discuss this statistic.

Moreover, because plaintiffs seek to enjoin further implementation of the allegedly offensive policies, the locus of policy implementation is more relevant than the locus of policy creation.

This conclusion would have even more force should plaintiffs succeed in this case. Enforcement of any injunctive or declaratory relief would focus almost exclusively on Tamms, its personnel and inmates. *See, e.g., Law Bulletin Publishing, Co. v. LRP Publications, Inc.,* 992 F.Supp. 1014, 1021 (N.D.Ill.1998) (transferring a case to Florida because "a Florida court is in a better position to enforce and monitor any injunctive relief awarded."); *Habitat Wallpaper & Blinds Inc. v. K.T. Scott Ltd. Partnership,* 807 F.Supp. 470, 475 (N.D.Ill. 1992) (transferring a case to Massachusetts because the injunctive relief requested would need to be enforced in Massachusetts). The court finds that the Southern District is the primary situs of material events, and therefore accords plaintiffs' choice of forum little weight.

## B. Access to Evidence

The court next considers the ease of access to sources of proof. Defendants argue that the files and records relating to plaintiffs and to the conditions of their incarceration are all at Tamms. *See Carillo v. Darden,* 992 F.Supp. 1024, 1026 (N.D.Ill.1998) (holding that this factor weighed in favor of transfer because "the records relating to this incident are located at the [prison]"). Plaintiffs counter that proof about their mental health status before they became inmates at Tamms can be found in the Northern District and elsewhere. According to plaintiffs, family members may be called upon to testify to an inmate's psychological condition before entering Tamms. The court agrees with plaintiffs that documents and records are easily transportable. *See, e.g., Law Bulletin Publishing, Co.,* 992 F.Supp. at 1018

("The court is satisfied ... that either party can easily bring to the district in which the case is litigated those documents that are not there already."); *Arena Football League, Inc. v. Roemer,* 947 F.Supp. 337, 341 (N.D.Ill.1996) ("Defendants have not demonstrated that they cannot bring the critical documents to this district."). Accordingly, this element does not weigh in favor of transfer.

## C. Convenience of Witnesses

Defendants argue that the convenience of witnesses also favors the Southern District. Defendants rely on Welborn's affidavit, in which he states that he anticipates that most of plaintiffs' and defendants' witnesses will be either inmates or staff from Tamms. Plaintiffs admit that Tamms inmates and staff will be witnesses, but aver that because these people are either parties or employees of a party, their convenience is not as important as the convenience of non party-related witnesses. Plaintiffs assert that they plan to call: expert witnesses from Chicago and out-of-state; plaintiffs' family members, many of whom reside in Chicago; policymakers stationed in both Chicago and Springfield (the Central District); and officials or medical personnel from facilities where the named plaintiffs were previously incarcerated, most of which are in the Northern and Central Districts.[2]

The court will address each of plaintiffs' arguments. First, the convenience of expert witnesses is not a factor courts consider in deciding a transfer motion. *See Blumenthal v. Management Assistance, Inc.,* 480 F.Supp. 470, 474 (N.D.Ill.1979); *Binz v. Iowa Interstate Railroad, Ltd.,* 1999 WL 90642, *3 (N.D.Ill. Feb.10, 1999) (holding that plaintiff's "counsel, expert witnesses and the investigator ... are all paid individuals ... whose job it is to be present in court"). Second, defendants argue that any incon-

---

**2.** According to plaintiffs, these officials will testify to the allegedly detrimental impact cer-

tain practices at Tamms have had on inmates.

venience to plaintiffs' family members is irrelevant because there is no evidence that they will offer testimony[3] and if they do, their testimony may be irrelevant. The court accepts plaintiffs' representations that family members may be called to testify about a plaintiff's past mental problems and whether and how those problems intensified after the inmate entered Tamms.

Finally, defendants argue that plaintiffs have not presented any evidence that non-party psychiatrists from other institutions will testify. The court notes that although plaintiffs present evidence that the named plaintiffs have spent more time incarcerated in the Northern District than in the Southern District, there is no way of knowing where the rest of the class was incarcerated prior to Tamms.

Because the witnesses plaintiffs plan to call are located in all three districts (the family members in the Northern, the policymakers in the Northern and Central Districts, and the inmates and officials in the Southern District), this factor does not favor either plaintiffs or defendants.

### D. Convenience of Parties

Defendants argue that the Southern District is more convenient for both parties because all of the plaintiffs are currently located there and four of the nine defendants reside there, while only two of the defendants, Dr. Page and Dr. Shansky, reside in the Northern District.[4] Plaintiffs respond that the Northern District is convenient for counsel on both sides, whereas the Southern District is far more convenient for defendants' counsel, because they have offices in Springfield as well as Chicago. Courts take the convenience of counsel into consideration, "but only if transfer would impose unnecessary costs on the parties." *Kingsley v. Dixon Old People's Home Fund, Inc.*, 1996 WL 417548, at *2 (N.D.Ill. July 22, 1996). Plaintiffs argue that courts may consider whether transfer will impose such expenses on plaintiff that he may be forced to terminate the litigation. *See Butterick Co. v. Will*, 316 F.2d 111, 113 (7th Cir. 1963). *Butterick* is inapposite, however, because plaintiffs do not assert that the transfer would force them to abandon their suit.

Plaintiffs note that the cost in time and money to travel from Chicago to Tamms is burdensome, particularly on plaintiffs' public interest lawyers. The court is sympathetic to this reality, especially where, as here, plaintiffs' lawyers are employed by a not for profit organization that is performing an important public service. Plaintiffs' argument is premised on the assumption that the case will be heard by one of the two Southern District judges in Benton, Illinois which, like Tamms itself, is not served by a commercial airport. Yet, as defendants point out, the case could well be transferred (by lot) to one of the five judges who sit in East St. Louis, just across the Mississippi River from St. Louis, Missouri, a major transportation hub with frequent air service.

Finally, defendants argue that if the case remains in the Northern District, they will be saddled with the costs of transporting dangerous prisoners across the state unless the court transfers the case. Defendants add that moving the prisoners poses security risks. Plaintiffs counter that transporting the prisoners from the Federal Metropolitan Correc-

---

3. Defendants base this argument on Welborn's statement in his affidavit that the plaintiffs' visiting histories do not suggest that they have had much contact with their families since they were incarcerated. This is a rather disingenuous argument. According to plaintiffs' allegations, Tamms, which is located in a remote part of the state some 370 miles from Chicago, places severe restrictions on visiting that make visitation an extremely inconvenient and unpleasant experience for both visitor and inmate.

4. The remaining three defendants, IDOC, DeTella, and Dr. Snyder, reside in the Central District.

tional Center ("MCC")[5] to the federal courthouse in Chicago will be easier than moving them from Tamms to a Southern District courthouse. Defendants reply that Tamms has its own courtroom facilities. The court concludes that unless the case is tried in the courthouse on Tamms' premises (which apparently cannot be used for jury trials), the parties will incur costs transporting plaintiffs from prison to courthouse, and plaintiffs may well have to be held in a state penal facility nearest the courthouse. Because it is unlikely that the case will be tried at Tamms if transferred, the court accords little weight to defendants' argument that failure to transfer will impose added costs and create a security risk.

The court finds that because transfer to the Southern District will impose extra travel time on both parties, and because plaintiffs' attorneys, regardless of the forum, will have to travel to Tamms to depose Tamms personnel and to meet with, depose, and otherwise prepare their clients for discovery and trial, transfer will not impose "unnecessary" costs on plaintiffs or their attorneys. *See Kingsley*, 1996 WL 417548, at *2 ("It is true, that if the case were heard in [the transferee forum], both parties' attorneys would be burdened with travel.... I am not persuaded that extra travel time would impose any hardship on plaintiff's attorneys."). Accordingly, the private interest factors weigh in favor of transfer.

**IV. The Public Interests of Justice**

■ In addition to the private interest factors, the court must also consider the following public interest factors that may warrant transfer: (1) the relation of the communities to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) the conges-

tion of the respective court dockets and the prospects for earlier trial. *See Hughes v. Cargill, Inc.*, 1994 WL 142994, at *2 (N.D.Ill. Apr.14, 1994).

Defendants argue that residents of the city of Tamms and the surrounding area have a greater stake in the outcome of the instant case than residents of the Northern District. According to defendants, the prison employs 430 people, a sizeable chunk of the community considering that the town of Tamms itself has only 950 residents. Defendants assert that, consequently, the Tamms community has "a vested interest in whether the Tamms Correctional Center stands or falls." Plaintiffs respond that the citizens of Cook County have more of an interest in the outcome of the case because the named plaintiffs committed the crimes for which they were incarcerated in Cook County and will probably return to the Northern District when released. Plaintiffs, who are all African Americans, also contend that plaintiffs will be more likely to get a jury of their peers in Cook County because the jury pool in the Northern District is twenty percent black, while the pool in the Southern District is just four percent black.

Both parties are incorrect. Defendants' argument is wrong because this suit does not seek the dismemberment of Tamms. Rather, it seeks to compel the administration of the institution to treat its inmates in compliance with the Constitution and the laws—interests shared by all citizens of the state. Plaintiffs are wrong because, even accepting their declarations, only sixty-four to eighty percent of the potential plaintiff class may return to the Northern District. The remainder will be returning to various areas around the state. Moreover, plaintiffs' desire for a more racially diverse jury pool rests on the controversial and rather pernicious notion that jurors

---

5. Because plaintiffs are not federal detainees, they may not be housed at the MCC during trial. The most common practice in prisoner civil rights trials is to house the plaintiff at a nearby state facility, such as Joliet or Stateville Penitentiaries, and transport them to court on a daily basis.

favor defendants of their own race and will make decisions based on these sympathies. Just as *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny prohibit the parties from basing their peremptory challenges "on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant," *id.* at 89, 106 S.Ct. 1712, the court cannot base a transfer decision on the assumption that black jurors will be more sympathetic to black plaintiffs. *See generally* Barbara D. Underwood, *Ending Race Discrimination in Jury Selection: Whose Right is it, Anyway?*, 92 Colum.L.Rev. 725, 733 (1992) ("Surely a Court that prohibits litigants from relying on a race-based generalization to challenge jurors should not rely on that same generalization itself.").

The first public interest factor is therefore a "wash," at least based on the parties' arguments. Because the court has decided that the Southern District is the situs of the material events, the court concludes that the administration of justice will be served more efficiently if the case is litigated by a court that is "closer to the action." *Paul v. Lands' End, Inc.*, 742 F.Supp. 512, 514 (N.D.Ill.1990).

The second factor of the interests of justice test also does not weigh in favor of either party, because the two courts are presumably equally familiar with the applicable law. The third factor, docket congestion, weighs slightly in plaintiffs' favor. Defendants present statistical evidence that the Northern District has a heavier overall caseload than the Southern District. Plaintiffs counter that the more important statistic is the median time from filing until disposition. Plaintiffs are correct that courts consider median filing-disposition time to be more significant than overall caseload. "[T]o anyone who understands the realities behind the statistics, the most meaningful figures in terms of court congestion are not the raw numbers of pending cases at year-end ... but these": (1) weighted filings per judge in

each district; (2) median time from filing until trial; and (3) the percentage of cases in each district that are over three years old. *Zalutsky, Pinski & DiGiacomo, Ltd. v. Kleinman*, 747 F.Supp. 457, 463–64 (N.D.Ill.1990).

Plaintiffs cite statistics from 1992 to 1997 which suggest that the two districts disposed of cases in nearly the same amount of time, although the Northern District disposed of civil matters a bit more quickly (in an average of five months, as compared to the Southern District's eight months). Plaintiffs also argue that this court disposes of cases more quickly than Judge Gilbert in the Southern District (plaintiffs reach this conclusion by comparing the number of motions pending over six months and the number of cases pending over three years). As noted above, however, this comparison is irrelevant, because the instant case might just as easily end up on the docket of one of the other six judges in the Southern District. Given that plaintiffs have presented evidence that is more relevant to the inquiry, and that plaintiffs' evidence suggests that the Northern District disposes of civil cases marginally more quickly than the Southern District, the third factor weighs slightly in plaintiffs' favor.

## CONCLUSION

After weighing all the relevant factors, the court concludes that this case should be transferred to the Southern District. Although a plaintiff's choice of forum is important, the court gives this factor less weight because plaintiffs are seeking class certification and because the court has concluded that the Northern District is not the situs of the material events. Moreover, the witnesses are dispersed across three districts, and all of the plaintiffs, a number of the defendants, and many relevant records can currently be found in the Southern District. Although the court acknowledges that transfer will inconvenience plaintiffs' counsel, it will not impose "unnecessary" costs on either party. The

court therefore concludes that, while the question is close and within the sound discretion of the court, the convenience of parties and witnesses and the interests of justice favor transfer.

Accordingly, the court grants defendants' motion to transfer this case to the Southern District of Illinois.