**Oscar I. de ROJAS, Plaintiff,**

v.

**TRANS STATES AIRLINES, INC., et al., Defendants.**

No. Civ.A. 01–2160.

United States District Court, D. New Jersey.

Nov. 19, 2001.

---

Peter Cresci, Cresci & Black, Bayonne, NJ, for plaintiff.

James N. Foster, Jr., Partner, McMahon and Berger, St. Louis, MO, David J.A. Hayes, III, St. Louis, MO, for defendants.

## MEMORANDUM OPINION

WOLIN, District Judge.

This matter comes before the Court on defendant's motion to dismiss, or, in the alternative, to transfer venue. This motion is decided on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, defendants' motion to transfer venue is granted, and this case will be transferred to the Eastern District of Missouri.

## BACKGROUND

Defendant Trans State Airlines is a Missouri corporation, with its principal place of business in St. Louis, Missouri. Defendant Hulas Kanodia is a resident of St. Louis, Missouri.[1] Plaintiff is Cuban–American pi-

---

1. Defendant Kanodia's position with defendant Trans State Airlines has not been identified by

lot. He was hired by defendant in July, 1999, and completed training at defendant's facility in St. Louis, Missouri in August, 1999. Plaintiff was then assigned to JFK International Airport in New York. On January 13, 2000, plaintiff received a termination letter from Capt. Tim Hawkins. Capt. Hawkins is the chief pilot of Region 3, which encompasses the northeast United States. Plaintiff was able to negotiate an agreement with Capt. Hawkins which allowed him to resign in February, 2000.

At all times relevant to this litigation, plaintiff was a permanent resident of the state of New Jersey. New Jersey income tax was regularly deducted from plaintiff's paychecks.

In May, 2001, plaintiff filed this action alleging wrongful termination and constructive discharge on the basis of national origin and race in violation of Title VII. Plaintiff also asserted state law claims for defamation, intentional infliction of emotional distress, negligence, tortious interference with contractual relations, fraud and negligent misrepresentation.

In August, 2001 defendants filed this motion, seeking to have the case dismissed, or transferred, for lack of venue in the District of New Jersey.

## DISCUSSION

■ Because a motion to dismiss for improper venue is not an attack on the jurisdiction of the court, but rather is "an affirmative dilatory defense" that questions only where the case should be tried, the "movant has the burden of proving the defense asserted by it." *Myers v. Amer. Dental Assoc.,* 695 F.2d 716, 724 (3d Cir.1982).

■ Generally, venue must be established for each cause of action. *See Washington v. Gen. Elec. Corp.,* 686 F.Supp. 361, 362 (D.D.C.1988). In this case, if venue is established for the Title VII claim, which plaintiff

admits is his primary claim, (see Plaintiff's Mem. of Law in Opposition to Defendants' Motion to Dismiss, at 10), it is established for his other claims as well since Title VII's venue requirement is stricter than that set forth in 28 § 1391(b).[2] For this reason, the parties apparently agree that the venue provision of Title VII controls. Title VII claims may be brought:

in any judicial district in the state in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice....

42 U.S.C. § 2000e-5(f)(3). *See also Equal Opportunity Comm'n v. Chas. Schaefer Sons, Inc.,* 703 F.Supp. 1138, 1146 (D.N.J.1988).

To determine if venue is proper in New Jersey, therefore, the Court must answer the following factual questions: 1) was the unlawful employment practice committed in New Jersey?; 2) are the plaintiff's employment records in New Jersey?; or 3) would plaintiff have worked in New Jersey but for the alleged discriminating conduct? If the answer to any of these questions is yes, then venue is proper. If, on the other hand, the answer to all three questions is no, the action must be dismissed or transferred.

## A. The District in which the Alleged Unlawful Employment Practice was Committed

■ Plaintiff claims that he was wrongfully terminated on the basis of race and national origin. He asserts that venue is proper in New Jersey because the wrongful termination occurred in Region 3. It is true that plaintiff's termination letter came from the chief pilot of Region 3, but this is inadequate to establish venue in New Jersey. Region 3 is not synonymous with New Jersey; in fact,

either party in any submission to the Court.

**2.** Although the doctrine of "pendent venue" allows venue to be established for subsidiary claims if venue is established for the principal claim, it does not work to establish venue for this action in New Jersey. *See, e.g., Washington v.*

*Gen. Elec. Corp.,* 686 F.Supp. 361, 362 (D.D.C. 1988). Title VII is the plaintiff's principal cause of action, so while the venue for the underlying claims may ride on the coattails of the Title VII venue, the converse is not true.

it encompasses many eastern states. Plaintiff urges that Region 3 does not include Missouri, but this is of no moment. The alleged unlawful employment practice must have occurred in New Jersey to establish venue in New Jersey; it is insufficient that it did not occur elsewhere.

Plaintiff also states that "[i]t is quite apparent that the *decision* to terminate plaintiff was made in Region 3, by Capt. Tim Hawkins...." (emphasis added) [Plaintiff's Mem. of Law in Opposition to Defendants' Motion to Dismiss, at 9] First, it is not at all apparent where the decision to terminate plaintiff was made. Even if the Court assumes that the termination decision was indeed made by Capt. Hawkins (and this is doubtful since the termination letter carbon copies two senior flight operations personnel who were based in St. Louis) there is no evidence that it was made in New Jersey, rather than any of the other states included in Region 3. Plaintiff himself admits that Capt. Hawkins was based in Georgia. Again, Region 3 and New Jersey are not one and the same.

Because there is no evidence that the wrongful employment practice was committed in New Jersey, plaintiff cannot establish venue in New Jersey under the first Title VII venue option.

## B. The District in Which the Relevant Employment Records are Kept

Plaintiff asserts that "[p]laintiff's records are apparently kept in Region 3, which includes Newark, New Jersey, *i.e.*, Tim Hawkins Termination Letter." As an initial matter, the Court notes again that Region 3 and New Jersey are not the same. Furthermore, the only support plaintiff cites for this proposition is that his termination letter was received from Capt. Hawkins of Region 3. This is clearly insufficient.

The evidence before the Court compels the conclusion that plaintiff's employment records are kept in St. Louis, where defendant is headquartered. According to the affidavit of Daniel E. Reed, defendant's Vice President of Flight Operations, all of plaintiff's employment records are kept in St. Louis. The Court is confident about Mr. Reed's knowledge of the records' whereabouts. According to plaintiff's own exhibits, in fact, his payroll records are maintained and administered from St. Louis.

As a result, plaintiff cannot bring this lawsuit in New Jersey on this basis.

## C. The District in which the Aggrieved Employee Would have Worked but for the Alleged Unlawful Employment Practice

Plaintiff states that he would have worked at Newark International Airport but for defendants' unlawful termination.

Defendant contends that this is entirely speculative, as plaintiff was employed at JFK International Airport in New York before his termination, and would have continued to work out of JFK if he had not left defendants' employ.

Defendants do admit that the airline stopped using JFK airport as a hub in December, 2000, eleven months after plaintiff's termination. At that point, Region 3 included Boston's Logan, Newark International and Baltimore–Washington International airports.

Plaintiff's attempt to establish venue under this prong fails in two ways. First, the defendant did not stop using JFK as a hub until late 2000, many months after plaintiff was terminated. If plaintiff had not been terminated, he would have continued to work from JFK where he had worked until February, 2000.

Furthermore, plaintiff's claim that he would be assigned to Newark is not only entirely speculative, but apparently wrong. Although plaintiff asserts that defendants "possess and maintain employees, airplanes [and] pilots" at Newark International, defendants dispute this. According to defendants, they have never had employees stationed in Newark. When defendants ceased to use JFK airport as a hub in December, 2000, they did not transfer or assign any pilots to Newark.[3] Although defendant Trans State

---

3. Defendants acknowledge that they do employ five mechanics in Newark, but these individuals were not employed there until early 2001.

Airlines flies in and out of Newark, the gate attendants and ramp attendants that service those flights are employed by U.S. Airways. [Reed Aff. II, ¶¶ 2, 3, 5]

Plaintiff points to the airline's website and flight schedule as evidence that it has employees in Newark, but these indicate only that defendant Trans State Airlines flies in and out of Newark, which defendants do not dispute. This evidence does not indicate that defendants have employees in Newark. As a result, the Court credits defendants' evidence that defendants do not have employees or maintain equipment in Newark, and therefore plaintiff would not have been employed in New Jersey without defendants' alleged adverse employment action. Venue in New Jersey cannot be established on this basis.

Plaintiff is not able to establish venue in New Jersey under any of the three options available under Title VII. Although the Court appreciates that plaintiff is a citizen of New Jersey, this alone does not give him the opportunity to bring a Title VII lawsuit in New Jersey. As the Second Circuit has stated in the Title VII context, "venue for [plaintiff's] right of action is circumscribed by the very statute that gives [him] the right to sue in the first place." *Bolar v. Frank*, 938 F.2d 377, 378 (2d Cir.1991). Plaintiff's Title VII lawsuit can only be brought in limited places, and unfortunately for plaintiff, New Jersey is not one of those.

The Court must now determine how and where this lawsuit should proceed.

**Transfer of Venue**

Both 28 U.S.C. § 1404 and 28 U.S.C. § 1406 provide for transfer of an action. Section "1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, [§ ] 1404(a) operates on the premise that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack*, 376 U.S. 612, 634, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

In this case, therefore, the Court must proceed under § 1406, because the venue has been improperly laid in the district of New Jersey. Section 1406(a) states that an action

"filed in the wrong division or district shall [be] dismiss[ed], or if it be in the interest of justice, transfer[ed] ... to any district or division in which it could have been brought." Although § 1406 gives the Court the choice to dismiss the action altogether, here the Court concludes that the interests of justice require this lawsuit to be transferred to the Eastern District of Missouri.

█ Under a § 1404 analysis, the court, when determining whether and where to transfer an action, looks at several factors addressing the private and public interests involved. A court determining whether to transfer an action under § 1406 need not address these specific factors, and indeed some of them do not apply.[4] A Court transferring venue under § 1406 must simply determine a venue in which the action originally could have been brought that serves the interest of justice.

█ After considering the evidence before it, the Court concludes that the appropriate venue for this action is the Eastern District of Missouri. The action originally could have been brought in the Eastern District of Missouri, where, at the very least, the second prong of the Title VII venue statute is satisfied as plaintiff's employment records are kept there. The Court also believes that venue in the Eastern District of Missouri satisfies the "interest of justice" because all of defendants witnesses are there, plaintiff's employment records are there, plaintiff was trained there, and employment decisions likely came from management in St. Louis. In addition, Missouri has an interest in adjudicating the conduct of its citizens.

█ Furthermore, there does not appear to be another venue that favors plaintiff. Plaintiff's proposed witnesses appear to be located all over the United States. Plaintiff claims that the enforceability of the judgment would favor New Jersey because defendant has equipment in this state, but according to defendant's more reliable evidence on this point, defendant has no equipment here and, in any case, is sure to have the bulk of its assets in the Eastern District of Missouri,

---

4. For example, the first consideration, the plaintiff's choice of forum, does not make sense in a

§ 1406 analysis in which the plaintiff's choice of forum has been found to be improper.

where it is headquartered. Plaintiff also claims that a transfer to the Eastern District of Missouri is unfair because he would not be able to get a jury of Hispanic peers there. This is not a legitimate basis to grant or deny a transfer. *See, e.g., Boyd v. Snyder*, 44 F.Supp.2d 966, 974 (N.D.Ill.1999).

Therefore, because venue in the district of New Jersey is improper and no other proper venue appears to have the same connection to the controversy as the Eastern District of Missouri, the Court grants defendant's motion to transfer this case to the Eastern District of Missouri.

## CONCLUSION

For the foregoing reasons, defendant's motion to transfer this case to the Eastern District of Missouri will be granted.